[No. 6398.]

GRAEB v. THE STATE BOARD OF MEDICAL EXAMINERS ET AL.

STATE BOARD OF MEDICAL EXAMINERS—*Authority to Revoke License of a Physician*—The statute (Rev. Stat. § 6068) is the sole source of authority of the board. In the phrase "obtaining a fee on the representation that a manifestly incurable disease can be permanently cured," the words "manifestly incurable disease," refer to the disease, and not to the condition of the patient. The statute, so far as it assumes to authorize the state board to revoke the license of a physician for the cause here attempted to be specified is void for insufficiency and uncertainty.

*Error to Denver County Court.*—Hon. GRANT L. HUDSON, Judge.

Mr. FRANKLIN H. BRYANT, for plaintiff in error.

Hon. BENJAMIN GRIFFITH, Attorney General.

Of Counsel, HARRY E. KELLY and CHARLES H. HAINES.

Mr. JUSTICE SCOTT delivered the opinion of the court.

On the 8th day of December, 1906, Elenor J. Shields filed a complaint with the state board of medical examiners, charging the plaintiff in error as follows:

That Ernest Herman Carl Graeb, heretofore licensed to practice medicine under the laws of this state, and now holding a valid license so to do, did on the 19th day of September, A. D. 1906, and on the 23d day of September, 1906, and at various times between said 19th day of September, A. D. 1906, and up to or about the 11th day of November, A. D. 1906, in the City and County of Denver, State of Colorado, *obtain a fee on the representation that manifestly incurable disease* could be cured, by soliciting, demanding and receiving a fee, and fees, upon the specific representation that *he could permanently cure one John*

*L. Shields,* of the disease known as consumption, said Shields having died on the 11th day of November, A. D. 1906, said representation having been made to said John L. Shields, and to deponent, and to complainant, and to others who hold themselves willing to appear and testify, said disease being at said time and times, manifestly and absolutely incurable, a fact which deponent and complainant believes that said Graeb well knew at said times.

Upon a hearing by the board and on April 2d, 1907, the license of Dr. Graeb was revoked. A writ of certiorari was issued out of the county court and upon hearing thereon, and on the 18th day of December, 1907, the writ was dismissed. The case is before us for a review of the proceedings. The question as to whether or not certiorari is a proper remedy in this case, is not raised and therefore not decided.

The only question presented is the validity of that portion of sec. 6068 Rev. State. 1908, authorizing the state medical board to revoke the license of a physician upon the ground of "obtaining a fee on the representation that a manifestly incurable disease can be permanently cured." It is contended that this provision is void for the reason that it is in conflict with certain provisions of the state and federal constitutions, and is too indefinite and uncertain to constitute such an offense as by reason whereof a physician may be deprived of his license to practice his profession. The scope of the county courts' powers and duties in the matter of review on certiorari, together with a review of the law as to the powers of state boards of medical examiners generally, will be found in the case of *Chenoweth v. State Board,* No. 7177, 135 Pac. 771, decided at this term of court. It is therefore not necessary to enter into these features in this opinion, but to adopt what was said in that case in so far as it may be applicable to the case at bar.

That part of sec. 6068, Rev. Stat. 1908, under which

the plaintiff in error was charged, and under which he was deprived of his license to practice medicine is, "The obtaining of a fee on the representation that a manifestly incurable disease can be permanently cured." We cannot enter into the question of the regularity of the trial, before the board, or the sufficiency of the proof in the case. The whole question hinges on what is, or whether there is a distinctly "manifestly incurable disease." In other words, is this term sufficiently definite and specific as to constitute such an offense against the public morals and public welfare, as may be sustained by the courts, as being sufficient to justify the action of the medical board in this case. It will be observed that no disease is named in the statute as being manifestly incurable.

We are relieved from much of the difficulty that would be ordinarily incident to this case, by the statements and admissions of counsel for the board. It is substantially admitted that the statute would not be valid if construed to have reference to a disease manifestly incurable *per se,* but it is contended that we should construe the statute to have reference to any disease whatsoever, with which the patient may be afflicted, and of which disease he is in a manifestly incurable condition.

The position of the board is very clearly stated in this respect in their brief in *Hamilton v. Board,* No. 7805, to which brief we are referred and asked to consider in connection with this case. This is as follows: "If the question were in controversy in this case as to whether the words 'manifestly incurable diseases' is so definite as to be unenforceable, we would welcome the issue, but we hesitate to burden this court with a vast number of authorities on a point not in issue. Suffice it to say that the words last quoted, do not refer to any diseases *per se,* but to a condition of the patient suffering from almost any disease. It is true that consumption is not 'a manifestly incurable disease' in itself, but an invalid suffering from

consumption may have reached a stage in which the disease is 'manifestly incurable.' Under our statute, a physician might lawfully take money for representing that he could cure one case of consumption, and at the same time be committing an offense from taking money under a similar representation as to another case of the same disease, which had manifestly gone beyond the curable stage.''

This argument is also advanced in this case but not so clearly stated as in the above quotation.

This position is not tenable. If the statute had intended a manifestly incurable person, or a manifestly incurable diseased condition, it would doubtless have so recited. But the language is a ''manifestly incurable disease.'' Clearly the descriptive words, *manifestly* and *incurable* apply to the *disease* and not to the *person* or the condition of the person afflicted with the disease. This is likewise the charge in the complaint, for it alleges ''that a manifestly incurable disease could be cured   *   *   * the disease known as consumption.''

Counsel for the board have cited no authority justifying such construction of the language used in the statute as that for which they contend and we do not see how language so clear and explicit can be so tortured. If there is no disease known and understood to be manifestly incurable, then the statute states no offense in that particular, and the board was without jurisdiction in the premises.

Dr. Graeb in the complaint is charged with receiving the fee on the representation that he could cure the manifestly incurable disease, consumption, with which disease the patient at the time was afflicted. Counsel for the board say ''it is true that consumption is not a manifestly incurable disease in itself.'' Indeed, it is not contended that any disease is manifestly incurable, but on the contrary, counsel for the board say:

"The statutory provision does not proceed upon the assumption that any disease by name, as such, is. incurable; for a specific disease that is incurable today may be curable tomorrow through the advancement of medical science; but it proceeds upon the undeniable fact, everywhere accepted, that diseased conditions do become 'manifestly incurable.'"

If then the state board of medical examiners composed of those presumed to be skilled in the science of medicine, speaking through their counsel, say that neither consumption, the disease referred to in the complaint, nor any other disease is manifestly incurable, which is the only authority, legal or medical, presented in this case on that subject, we must hold as a matter of law, that the statute insofar as it is herein considered, is void because of insufficiency and uncertainty.

The only case cited by counsel for the board as tending to sustain the contention that the statute is not void for indefiniteness and uncertainty and considering anything like a similar statute is *Board v. McCrary,* 95 Ark. 511, 130 S. W. 544, 30 L. R. A. (N. S.) 783, Ann. Cas. 1912A, 631. The statute considered in that case contained the words "chronic and incurable." It will be observed that the court discussed these words as used together, and refers to the word "chronic" only, as having a clear and definite meaning. It is there said:

"The word 'chronic' is the antithesis of 'acute' and a chronic and incurable disease is generally understood to be one of long standing, deep-rooted, obstinate, persistent, and unyielding to treatment. On this account those afflicted with such disease become discouraged, and to an extent desperate, and more easily become the prey of conscienceless and unscrupulous practitioners in the medical profession."

We know of no statute containing like provision to the one under consideration, and none such has been called to our attention.

It may be admitted that if Dr. Graeb was of the opinion that Shields' condition was incurable and so believed, and that having such opinion and belief, he obtained from Shields a fee upon the representation and promise that he, Graeb, could cure him permanently, that such act upon the part of Graeb, would constitute such moral turpitude as may well furnish sufficient ground to deprive him of his license, if there was a statute so providing. But we have studied the statute in vain for any ground upon which any such charge may be reasonably included, and upon which the board may revoke a medical license. Our statute has omitted all such provisions as "dishonorable conduct" or such other similar causes as are common in like statutes and which have been sustained by the courts. It is to be regretted that our law makers have elected to depart from the well beaten paths in this regard, and to enter into a new and untried field by the use of terms, without precedent and without apparent consideration or reason.

The statute is the sole source of the authority of the board and it assigns certain specified acts and conduct, as may justify the revocation of a license. These are: (a) The employment of fraud or deception in applying for a license, or in passing the examination required; (b) the practice of medicine under a false or assumed name; (c) the personation of another practitioner of a like or different name; (d) the conviction of a crime involving moral turpitude; (e) habitual intemperance in the use of ardent spirits, narcotics, or stimulants, to such an extent as to incapacitate for performance of professional duties; (f) procuring, aiding or abetting in procuring a criminal abortion; (g) obtaining a fee on the representation that a manifestly incurable disease can be permanently cured; (h) causing the publicity and circulation of an advertisement of any medicine or means whereby monthly periods of women can be regulated, or

the menses, if suppressed, can be re-established; and (i) causing the publication and circulation of an advertisement relative to any disease of the sexual organs.

It will be noted that even the commission of a crime is not sufficient basis for revocation, but there must first be conviction.

Thus, moral turpitude is excluded except in case of conviction in a court of justice, and is in this way eliminated as a basis for revocation under the statute. Quite clearly the causes designated in the statute are exclusive and the maxim, *expressio unius est exclusio alterius applies.* But if we were to concede the contention that the statute relates to the condition of the patient, and not to the disease with which he may be afflicted, when would the question of curability cease to be one of opinion, and become a manifest fact. We may concede that physicians of skill and experience can form a well grounded opinion as to the question of curability, but of necessity this can be of no greater force than that of opinion and conclusion. Manifestation is specific demonstration to the eye, clear alike to all, skilled or unskilled. Then at what point short of death may we reasonably say that the ultimate result of such a disease ceases to be a question of opinion and becomes a manifest fact. We are not willing to sanction a rule for punishment because of difference or mistake in opinion, nor to agree that those of a skilled class may be penalized for an opinion differing from that of their fellows. If so, where are we to draw the line of such difference, and who may be safely trusted to render judgment as between them? We cannot concede the infallibility of man nor deny the Providence of God. If then, we should adopt the reasoning of counsel for the board, the provision of the statute still remains too indefinite and uncertain to form the basis of a judgment for the revocation of a physician's license.

The judgment is reversed with instructions to the court to enter an order cancelling the action of the state board of medical examiners in revoking the license of the plaintiff in error, to practice madicine.

*En banc.*

MUSSER, C. J., GARRIGUES, J., and WHITE, J., concurring.

BAILEY, J., GABBERT, J., and HILL, J., dissent.

Mr. JUSTICE GABBERT dissenting:

The police power of government is inherent in every sovereignty. It is that power vested in the legislature, which may be exercised by the enactment of laws, the purpose of which is to protect and promote the public welfare. That such is the purpose of the clause of the statute under consideration, and that its enforcement will protect the public, there can be no question. The majority opinion, however, decides, that it does not, for the reason, it cannot be said there is any disease, known and understood, to be manifestly incurable. This is too narrow a construction. When is a disease manifestly incurable? Clearly, when it is evident it has reached the stage that it cannot be made to yield to medical treatment. That is what laymen, as well as the medical profession understand from the expression, "a manifestly incurable disease." The intent of the law is to be considered in its interpretation, and in ascertaining such intent, the evil against which it is directed must be considered. It is common knowledge that one suffering from disease can easily and readily be imposed upon by those, who by reason of the fact that they have obtained a license to practice medicine, are presumed to possess

that degree of skill in the treatment of disease which will enable them to accomplish that which they represent they can. The object of the statute is to prevent what would be nothing less than extortion by members of the medical profession, obtaining money from persons or the relatives and friends of those suffering from disease by promising a cure when it is apparent that the patient is beyond the reach of medical science. Such being the object of the statute, the words employed to express it should not be given such a narrow construction as will result in destroying its beneficent purpose, when from such language, and the general understanding of what it means, it is apparent, that the legislature intended to prevent the helpless ill being imposed upon by the promises of a cure when it was evident their condition was such that it could not be accomplished.

The judgment of the county court should be affirmed.

Mr. JUSTICE HILL and Mr. JUSTICE BAILEY concur in this opinion.