No. 13,029.

SAPERO *v.* STATE BOARD OF MEDICAL EXAMINERS.
(11 P. [2d] 555)

Decided April 25, 1932.

Mr. Philip Hornbein, Mr. E. Clifford Heald, Mr. Joseph E. Newman, for plaintiff in error.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. CHARLES H. HAINES, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE ADAMS delivered the opinion of the court.

THE state board of medical examiners, upon notice and hearing, revoked the license of Kalman C. Sapero to practice medicine. He took the case to the district court on certiorari, and that court upheld the medical board. Sapero brings the case here for review on writ of error.

The facts are undisputed. The charge against Dr. Sapero was alleged unprofessional and dishonorable conduct in the publication of certain advertisements. He has practiced medicine for upwards of thirty-five years and no question of his professional skill, moral character or misrepresentation of any kind is involved. He visits various parts of the state from time to time and advertises his comings in local newspapers. Evidence of three of these advertisements was produced; it is the only ground of the charge against him; he admits their publication, but denies unprofessional or dishonorable conduct. The first advertisement was published in Lamar on April 11, 1930; the second in Florence on September 3, 1930, and the third in Sterling on February 25, 1931, all in the state of Colorado.

The first publication is the most elaborate and objectionable, but Sapero's uncontradicted testimony is to the effect that he had been advertising for over thirty-five years; that at a previous informal hearing shortly before the present action, he promised the board that he would not use the large advertisement any more, and has not done so; that it was his understanding at the last meeting of the board, before his license was revoked, that he would be permitted to continue with a short form of advertising; that since his promises, his announcements

have not been over two inches, which he said, was the least he could do to bring his visits before the people. It is unnecessary to quote the first advertisement. The last two read as follows:

"Dr. K. C. Sapero is coming again to Sterling, one day only, Thursday, April 9, at Graham Hotel. He treats successfully diseases of the eye, ear, nose and throat, also catarrh, deafness, tonsils, adenoids and goitre. Glasses fitted scientifically with or without chart. Dr. Sapero has been visiting here regularly for the past 30 years.—Adv."

"Now is your opportunity to consult Dr. Kalman C. Sapero, the well known Denver specialist, who has been visiting Florence for more than 30 years. He will again be in Florence Friday, September 12, at the Florence Hotel. He treats successfully diseases of the eye, ear, nose and throat, also catarrh, deafness, tonsils, adenoids and goitre. Glasses fitted scientifically."

Counsel for the medical board says on the concluding page of his brief: "The action of the board ought to be sustained on the ground its decision was not judicial but legislative, administrative, ministerial or quasi judicial, and power to make *final decision* [our italics] had been constitutionally committed to it by the General Assembly. Even if the conclusion of the board on this question was erroneous it is not subject to review by certiorari." We shall consider these propositions.

Unfortunately, the merits of the cause, even to the question of whether a prima facie case was made, have been almost entirely overshadowed by arguments of learned counsel for the medical board on the subject of the official rights and duties of the board and other procedural questions. His propositions are of such a serious nature, and so candidly show the theory upon which Sapero was convicted that we are compelled to discuss them, although all important questions raised by the board have been decided before adversely to its contentions in previous decisions of this court. Without our

volition these questions have been again thrust into the foreground. They go to the question of whether the medical board has exceeded its jurisdiction or greatly abused its discretion.

1. Section 4536, C. L. 1921, contains numerous grounds for the revocation of a physician's license, among them being, "immoral, unprofessional or dishonorable conduct." The above statute also specifies various kinds of advertising of a reprehensible character which are particularly inhibited, but it is not claimed that any of the publications in question come within the latter class. The complaint against Sapero is limited to alleged "unprofessional or dishonorable conduct," based solely upon the advertisements mentioned.

In addition to the statute, the medical board claims that it has legislative powers, delegated to it by the general assembly, but the legislature cannot delegate its powers, and we find no place in the medical act where it has been even attempted. The completeness of the statute is one of the strongest proofs that no delegation of power was intended. 6 R. C. L. 165; *Travelers Insurance Co. v. Industrial Commission,* 71 Colo. 495, 498, 208 Pac. 465.

Section 1, article 5 of the Constitution of Colorado reads: "The legislative power of the state shall be vested in the general assembly consisting of a senate and house of representatives, both to be elected by the people * * *." In Cooley's Constitutional Limitations (8th Ed.) page 224, it is truthfully said: "One of the settled maxims in constitutional law is, that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the constitution itself is changed." As remarked in *Travelers Insurance Co. v. Industrial Commission, supra,* the "people have, by constitutional enactment, limited the exercise of this great

power to those directly chosen by them and specifically authorized thereto.''

2. If counsel had said that it is the duty of the board to *interpret* the medical act, and put it into execution, subject to certiorari, we should have had no difficulty in agreeing with him. The general assembly may not delegate the power to make a law; but it may delegate power to determine some fact or a state of things upon which the law, as prescribed, depends. *Colorado and Southern Railway Co. v. State Railroad Commission,* 54 Colo. 64, 84, 129 Pac. 506; *Field v. Clark,* 143 U. S. 649, 694, 12 Sup. Ct. 495, 36 L. Ed. 294. See also 48 C. J., page 1096, section 64, as applied to physicians and surgeons.

The subject of nondelegable powers covers a wide range, but we adopt the concise statement employed by our highest court in *Field v. Clark, supra,* at pages 693, 694 of its opinion, which reads: '' 'The true distinction * * * is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.' *Cincinnati, Wilmington etc., Railroad v. Commissioners,* 1 Ohio St. 88. In *Moers v. City of Reading,* 21 Penn. St. 188, 202, the language of the court was: 'Half the statutes on our books are in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such discretion is the making of the law.' ''

3. As a side light on the present medical act, interesting history was made in *Chenoweth v. State Board of Medical Examiners,* 57 Colo. 74, 141 Pac. 132, 51 L. R. A. (N. S.) 958, decided at the January term, 1914. We there pointed out, at page 81 of our opinion, that the then existing statute (section 6068, R. S. 1908) did not

make unprofessional or dishonorable conduct a ground of revocation of a physician's license. The 1915 general assembly, apparently mindful of this suggestion, remedied defects in previous acts, among other things by adding the words, "immoral, unprofessional or dishonorable conduct." The same words were repeated in another amendment, S. L. 1917, page 359, section 11, identical with section 4536. We do not regard the words quoted as indefinite or uncertain; they have been repeatedly considered by the legislature with care, and the same or similar words have been often made the bases of complaints or informations for the revocation of professional licenses in this state and other jurisdictions. *State Board of Medical Examiners v. Spears,* 79 Colo. 588, 247 Pac. 563, 54 A. L. R. 1498 and notes; *Dillard v. State Board of Medical Examiners,* 69 Colo. 575, 577, 196 Pac. 866; *State Board of Dental Examiners v. Savelle,* 90 Colo. 177, 8 P. (2d) 693; *State Board of Dental Examiners v. Miller,* 90 Colo. 193, 8 P. (2d) 699; *State v. Purl,* 228 Mo. 1, 128 S. W. 196; *Aiton v. Board of Medical Examiners,* 13 Ariz. 354, 114 Pac. 962, L. R. A. 1915A, 691. Such conduct on the part of physicians is the most common statutory ground for the revocation or suspension of their professional licenses. 48 C. J., page 1099, section 72. Manifestly it was impossible as well as unnecessary for the general assembly to anticipate all evil deeds that the words "immoral, unprofessional or dishonorable" were intended to cover; hence the wisdom of looking to the usual definition of such words, or "the common judgment of mankind," for a standard of construction. It crystallizes the statute into a definite meaning that all who read should be able to comprehend. We refer to this later.

4. It is plain from the above that section 4536 was not reinforced and needed no reinforcement by the supposed legislation of the board. But this being true, would it not seem from the fact that counsel for the board seeks to supplement the statute with canons of profes-

sional ethics or medical legislation, that it betrays a fear that section 4536, C. L., does not control Sapero's newspaper articles? Otherwise, why attempt to augment the statute? Another fact is notable. The canons of the medical examiners upon the subject of professional advertising do not appear in the record. So that if even a mere question of professional ethics were involved, we cannot say that they were breached. The burden of proof is not on Sapero. Counsel for the medical board has a short chapter in his brief entitled, "The Evils of Medical Advertising," but he cites no authorities thereunder, and none elsewhere in his brief where the facts are like those here. Nevertheless, counsel for the board says this: "* * * we do not wish the court to think that we contend as a conclusion, that Doctor Sapero or any other individual physician who advertises is either unskillful or dishonorable. We merely state the *general* fact." We cannot, however, lose sight of the issues in generalities. The dishonorable character, if any, of these particular publications by Sapero (a question so meagerly presented by the medical board) is a matter of gravest importance.

5. It is argued upon behalf of the medical board that it is more capable than any one else of determining the standards of the medical profession; hence it should be the sole judge of Sapero's conduct. This argument is wholly beside the point; any comparison, either favorable or unfavorable, between the learned professions, neither enlarges nor diminishes the powers or duties of the medical board. The statute is the sole source of its power, which it cannot transcend. *Graeb v. State Board of Medical Examiners*, 55 Colo. 523, 139 Pac. 1099; *State Board of Dental Examiners v. Savelle, supra.* The board has power in the first instance, to decide what constitutes unprofessional conduct, but if it abuses that power, the court will reverse its judgment. *Dillard v. State Board of Medical Examiners, supra.* On certiorari, it is proper for the *court* to say whether the evidence shows the de-

fendants guilty of moral turpitude. *White v. State Board of Medical Examiners,* 70 Colo. 50, 51, 197 Pac. 564; *Dillard v. State Board of Medical Examiners, supra; State Board of Dental Examiners v. Savelle, supra; State Board of Dental Examiners v. Miller, supra.* Certiorari has been held applicable even to a constitutional administrative body (*State Civil Service Commission v. Hoag,* 88 Colo. 169, 174, 293 Pac. 338), whereas the medical board is only of statutory origin.

■ 6. It is absurd to intimate that courts covet the powers of the medical board when not only provisions of the medical act itself (section 4536, C. L.), but also the Code of Civil Procedure and other provisions of law impose upon the courts the duty of reviewing the acts of such board. It does not have jurisdiction equal to, or coordinate with, that of the courts; if any of the orders of the board are defied, it is helpless without judicial process. This disparity in powers and duties is not of judicial origin; certainly it cannot be supposed that the above laws, or the express provision of section 4536 reserving the remedy of certiorari to review the acts of the medical board in either "refusing to grant or in revoking a license to practice medicine," are the product of judicial legislation.

That which we said of the Public Utilities Commission in *People v. Swena,* 88 Colo. 337, 339, 340, 296 Pac. 271, applies with equal force to the state board of medical examiners. It is said in the above opinion: "The Public Utilities Commission is not a court. * * * It is charged with the performance of certain executive and administrative duties. In the performance thereof, and as incidental thereto, it hears evidence, ascertains facts, and exercises judgment and discretion, but this is the exercise of merely a quasi judicial function, not the exercise of judicial power within the meaning of the Constitution."

■ 7. The assumption that the medical examiners should have the exclusive right to determine the qualifi-

cation of an individual to practice medicine is an implied offer, not only to perform their own allotted tasks, but also to assume the responsibilities of the courts on certiorari and writ of error. But courts cannot delegate their judicial duties. As said by Mr. Justice Helm fifty years ago in *Haverly Invincible Mining Co. v. Howcutt,* 6 Colo. 574, 575, the members of this court are not permitted to "abdicate this bench and review a given case by proxy; if they might review one case this way, they might rid themselves of the work in a hundred." To same effect: *Terpening v. Holton,* 9 Colo. 306, 317, 12 Pac. 189. The findings of the medical board are persuasive, but not conclusive. An examination of the record with slavish adherence to the findings and without fidelity to the law and facts would not be a judicial review.

8. A physician's license cannot be revoked merely for violating professional ethics or the rules of a board of health; to be actionable, it must amount to a breach of law. *State Board of Dental Examiners v. Savelle, supra,* and cases there cited; *Chenoweth v. State Board of Medical Examiners, supra; Aiton v. Board of Medical Examiners, supra.* The term "unprofessional" is convertible with "dishonorable," in the common use of the word, and considered as dishonorable in the common judgment of mankind. (Id.) Comparing law with medicine, we know of no reported case where an attorney has been disbarred or disciplined by the court that its action would not be approved by an enlightened public conscience.

Nothing we have said is to be construed as either an approval or disapproval of Sapero's publications. The subject of professional advertising is too important and far-reaching in its consequences to be determined lightly. We are confident of the ability of counsel to assist us, but our eyes are on the fugitive issue. It consists of a question of law, i. e., the publications being admitted, do they violate, not attempted legislation by the board, but the statute? As to this, the prosecution has been unduly

reticent. We do not charge it to carelessness or oversight, but to a mistaken belief either that we are not interested in this vital question or that no convincing argument was needed because we were supposedly foreclosed from exercising our own judgment or from performing any office except to formally ratify and approve the actions of the board, propositions to which we cannot agree.

9. An offense committed under extenuating circumstances may call for the exercise of leniency, and a major punishment therefor may amount to a great abuse of discretion. Savelle case, supra. Under the circumstances mentioned in our statement of facts, Dr. Sapero having kept faith with the medical board in desisting from further publications like the first one printed in Lamar after it seems he had been admonished, and having understood that such was his punishment, we think the first charge should have been eliminated, as requested by counsel for Sapero at the hearing before the board. This disposition would seem to be especially appropriate after Sapero had advertised for thirty-five years by sufferance at least, and none of the advertisements were of the reprehensible character such as are particularly condemned by section 4536 of the statute. We shall not attempt to determine whether the two last publications (one at Sterling and the other at Florence) are actionable under the statute, since it appears from the brief of counsel for the medical examiners that they rely upon imaginary legislation of their own to sustain the conviction. We suggest, however, that if it be assumed that such publications are within the purview of the statute, a milder penalty should have had consideration under the circumstances. If such advertisements are repeated, and if Sapero is then charged with an offense under section 4536, C. L. 1921, and nothing else, it will be time enough to consider the question of his culpability. We shall not undertake to change the present theory of the prosecution.

10. The conclusion is inevitable that the state

board of medical examiners exceeded its jurisdiction and that it greatly abused its discretion. If this action should be sustained under the theory of counsel for the board, it would vest in that statutory body oligarchical powers and encroach upon the constitutional duties of every department of state. It would usurp the prerogatives of the legislature, deprive the chief executive of an opportunity to veto the "legislation" of the board, and render the courts impotent to redress a wrong. When the medical examiners and their counsel pause to reflect, we are confident that their own good judgment will condemn the system proposed, even if it were possible to inaugurate it.

11. The state board of medical examiners is of commanding dignity and importance, and its membership consists of physicians chosen for their probity and high professional standing. These facts are an incentive to the cooperation of the courts; we have repeatedly expressed our confidence in the medical examiners and it has not abated. Our tokens will be found in our numerous decisions, where the medical board, under the guidance of its eminent counsel, has been successful in eliminating unworthy members from the medical profession. Such efforts have a counterpart in similar contributions to the public weal by the grievance committee of the Colorado Bar Association. Aid comparable with writs of assistance is ever at the disposal of such boards and committees, but they, as well as we, are rightfully governed by law and established rules enacted in the interest of justice. We should alienate public confidence without an observance of these standards. We do not impugn the motives of the members of the board; these public officers acted under an honest, but mistaken, conception of their duties; this is purely an official matter, and the fact that we are unable to agree with the medical examiners is not susceptible of being construed as a personal reflection. It is only an incident of appellate procedure, as

myriads of reported decisions in state and federal courts will bear ample witness.

Counsel for Sapero have furnished us with able briefs, going to the merits of the controversy and the law that they deem applicable thereto, but in view of the disposition of the cause, we do not find it necessary to determine any additional questions.

For the reasons stated, the judgment is reversed and the cause remanded to the district court with directions to recommit the same to the state board of medical examiners with instructions to dismiss the proceedings.

MR. JUSTICE BUTLER specially concurs.

MR. JUSTICE CAMPBELL not participating.

MR. JUSTICE BUTLER, concurring.

I concur in the decision, but wish to add to the reasons assigned for a reversal of the judgment one that seems to me to be too important to be overlooked.

The right to revoke the license of a physician exists only by virtue of legislation enacted under the police power. To be valid, such legislation must bear a fair relation to the public health, safety, morals or welfare and tend to promote or protect the same. The legislature has no power, under the guise of police regulation, to arbitrarily invade the personal rights of an individual. It cannot provide for the revocation of a physician's license for a mere breach of ethics not involving moral turpitude or dishonorable conduct. The advertisements published by Sapero were entirely harmless, and could not injuriously affect the public health, safety, morals or welfare. Their publication, therefore, did not justify the revocation of his license. While such publication may be considered unethical by some, or even many, physicians, and may even constitute ground for exclusion from a medical society, it no more justifies the revocation of a physician's license to practice than would a mere breach

of etiquette, or the exhibition of table manners that do not conform to the usage of polite society.

Such advertising does not come within the prohibition of the statute. If the statute attempted—and it does not —to make it a ground for the revocation of a physician's license, it would be unconstitutional and void. It is needless to cite more than one of the cases that support this proposition. *Chenoweth v. State Board of Medical Examiners*, 57 Colo. 74, 141 Pac. 132. The revocation of Sapero's license was an abuse of the board's discretion.

For the reasons stated in the principal opinion and in this, the reversal of the judgment is proper.