## No. 13,805.

IN RE INTERROGATORIES OF THE GOVERNOR.

(51 P. [2d] 695)

Decided October 28, 1935.

Mr. E. LAURELLE FUNDINGSLAND, Mr. ALBERT L. VOGL, amici curiae, affirming the constitutionality of the act.

Mr. PAUL P. PROSSER, Attorney General, Mr. NORRIS C. BAKKE, Deputy, Mr. CHARLES ROACH, First Assistant, denying the constitutionality of the act.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THIS opinion is written in response to the governor's interrogatories in re the constitutionality of chapter 89, page 298, Session Laws 1935, hereinafter referred to as chapter 89.

Section 3, Article VI, of our Constitution provides that "The supreme court shall give its opinion upon important questions upon solemn occasions when required by the governor, * * *." What are such questions and occasions rests ultimately with the court. *In Re Interrogatories,* 62 Colo. 188, 162 Pac. 1144; *In Re Senate Resolution No. 2,* 94 Colo. 101, 31 P. (2d) 325. When questions submitted by the governor express no doubt as to constitutionality no opinion will be given by the court. *In Re Certificates of Indebtedness,* 18 Colo. 566, 33 Pac. 556; *In Re Interrogatories by the Governor,* 71 Colo. 331, 206 Pac. 383.

Chapter 89 was approved April 4, 1935, and members of the board therein provided for were appointed by the Governor. We are advised by the submission herein that the decision (May 27, 1935) in *Schechter v. U. S.,* 55 Sup. Ct. 837, 79 L. Ed. 888, "raised serious doubts as to the constitutionality" of chapter 89; that on August 30, 1935, the Attorney General, in a formal opinion, "pronounced said statute unconstitutional"; that "the doubt and uncertainty now existing as to the constitutionality of said act are so highly detrimental to the business, industrial and economic interests and activities of this State as to render the question of the validity of said act of deep and immediate concern to all the people of this State"; and that the chief executive believes the question important and the occasion solemn, as that language is used in the Constitution. We are not, however, directly advised as to how this is now true when presumably it was not when the General Assembly passed the act, when it was approved, or when appointments were made under it. Neither are we directly advised that the Governor himself has any doubt of the correctness of the opinion of the Attorney General declaring the act unconstitutional. The

majority of the justices, however, concluded that a fair inference to be drawn from the submission was that the Governor himself entertained such a doubt and that the origin thereof was the Schechter decision, hence concluded that the interrogatories of some of them, should be answered. Nevertheless, it seems well to point out that since it does not appear that the Governor has any further duty to perform under the act it is not clear that he is in position to propound interrogatories under said section 3 of article VI; that neither the Attorney General nor the board is authorized so to do, and if they otherwise were they do not here appear to doubt that the act is unconstitutional. Since these questions are neither raised nor argued in the proceeding before us we leave them undecided, commenting as above only that like errors, if they be errors, may in future be avoided.

■ ■ The act here in question contains nineteen sections and covers fourteen printed pages. It is a so-called "Industrial Recovery Act" modeled on the federal legislation dealt with in the Schechter case and is tied into that legislation by numerous references and provisions. We are specifically asked if it violates any one of four sections of article II, or any one of three sections of article V, or section one of article X, or any part of article III of the state Constitution, or the due process and equal protection clause of section one of the Fourteenth Amendment of the Federal Constitution, and generally if it violates "any other provision of the state Constitution or of the Federal Constitution." As pointed out by this court almost half a century ago, when asked only for a construction of four sections of article XVI of the state Constitution, such responses are impossible, not within the intention of said section 3 of article VI, and would otherwise be fraught with immeasurable dangers. If chapter 89 is unconstitutional for any reason our duty ends when we have so declared. Beyond that we would become legal advisers to future sessions of the General Assembly, a field forbidden us by the Constitution.

This cause has been extensively briefed and ably argued, both by the attorney general's office and amici curiae and we are greatly indebted to them therefor.

■ That chapter 89 is a plain violation of article III of our state Constitution, which divides all governmental powers into three departments and prohibits the interference of one with another, and of section 1 of article V vesting all legislative power in the General Assembly (save for an exception not here involved) seems to us beyond doubt. *Burcher v. People,* 41 Colo. 495, 501, 93 Pac. 14; *People v. Lange,* 48 Colo. 428, 429, 110 Pac. 68; *Sapero v. State Board,* 90 Colo. 568, 573; 11 P. (2d) 555. If not, it is settled for all time by the decision of the United States Supreme Court in the Schechter case, supra. No further analysis seems to us necessary. We find no substantial difference on this point in the two acts. There the learned Chief Justice, speaking for a unanimous court, examines every important question here involved, reconciles or differentiates many of the leading cases here cited and relied upon, and rests the court's conclusions upon principles and reasoning which appear to us impregnable and as applicable here as there. We are content to so leave it.

MR. JUSTICE HILLIARD and MR. JUSTICE BOUCK (who will file a dissenting opinion) dissent.

The following dissenting opinion was filed November 21, 1935.

MR. JUSTICE BOUCK, dissenting.

His excellency, the Governor of this state, propounded interrogatories to this court concerning the constitutionality of chapter 89, Session Laws of Colorado, 1935. The Governor asserted that a solemn occasion justified him in asking for the advice of this court, and this court, by taking jurisdiction and consenting to answer the interrogatories, affirmed that the occasion was a solemn one. Colo. Const., article VI, section 3. Even if the instances where this court should answer interrogatories pro-

pounded by the chief executive had not been limited by the state Constitution to "solemn occasions," this court ought not to overlook the fact that declaring an act of the General Assembly unconstitutional is a matter of extreme delicacy.

The United States Supreme Court has said: "The judicial duty of passing upon the constitutionality of an act of Congress is one of great gravity and delicacy. The statute here in question has successfully borne the scrutiny of the legislative branch of the government, which, by enacting it, has affirmed its validity; and that determination must be given great weight. This court, by an unbroken line of decisions from Chief Justice Marshall to the present day, has steadily adhered to the rule that every possible presumption is in favor of the validity of an act of Congress until overcome beyond rational doubt." *Adkins v. Children's Hospital*, 261 U. S. 525, 544, 67 L. Ed. 785, 790, 43 Sup. Ct. 394, 396.

These words, spoken in 1923 of an act of Congress, are equally applicable when state supreme courts are passing upon the constitutionality of state laws.

The majority's condemnation of the act in question (the Colorado Industrial Recovery Act) is based upon three grounds, namely, first, upon the alleged violation of article III of the Colorado Constitution (being the provision which forbids the legislative, the executive and the judicial department to "exercise any power properly belonging to either of the others, except as in this Constitution expressly directed or permitted"); and, second, upon the alleged violation of Section one of article V thereof (being the provision which prescribes the methods of enacting state laws); and, third, upon the decision in *Schechter v. United States*, 295 U. S. 495, 79 L. Ed. 1570, 55 Sup. Ct. 837. The majority opinion of this court, without any discussion of the act, declares it to be "a plain violation" of the two Colorado provisions thus relied upon as underlying the first and second grounds, and cites three decisions of this court in support of the

declaration. Then the opinion continues: "If not [such plain violation], it is settled for all time by the decision of the United States Supreme Court in the Schechter case, supra. No further analysis seems to us necessary. We find no substantial difference on this point in the two acts."

To such a casual and summary nullification of a duly enacted law of our state legislature I cannot give my assent. *Johnson v. McDonald*, 97 Colo. 324, 49 P. (2d) 1017, 1022.

1. The three Colorado cases cited in the opinion as establishing the first and second of the three grounds are: *Burcher v. People*, 41 Colo. 495, 93 Pac. 14; *People v. Lange*, 48 Colo. 428, 110 Pac. 68; and *Sapero v. State Board*, 90 Colo. 568, 11 P. (2d) 555.

In the Burcher case this court considered and declared unconstitutional a statute whereby the Colorado legislature undertook to prohibit the employment of women for more than eight hours a day in a mill, factory, manufacturing establishment, shop, or store. The statute seems to have expressly devolved upon the courts the power to decide the preliminary question of danger to health, despite the fact that the Constitution placed that duty upon the legislature itself. Mr. Chief Justice Steele dissented and apparently considered the statute itself constitutional. That case was decided in 1907, when modern principles of social justice were rarely enacted into law and even less frequently given judicial sanction. Since then, more than a quarter of a century has run its course. It is a different world that faces us in 1935. (See *Home Building and Loan Ass'n. v. Blaisdell*, 290 U. S. 398, 442, 78 L. Ed. 413, 431, 54 Sup. Ct. 231, 241.) We may well dispose of the Burcher case, however, by saying that it bears hardly any analogy to the case at bar (the facts and principles in the former being entirely different from those in the latter), and by quoting the language of the opinion itself (at page 504 and Pac. page 17, respectively): "If this [conclusion of the court that there was a manifest lack of "at least one essential condition prece-

dent to the validity" of such legislation as was attempted there to be enacted in the exercise of the police power] * * * were not so, this judgment must [nevertheless] be reversed, for * * * the laundry business must be considered healthful; for counsel themselves, in their stipulation of facts, * * * are in accord that such occupation is healthful."

In the Lange case Mr. Chief Justice Steele wrote the opinion of this court saying (at page 431 and Pacific Reporter page 70, respectively): "We find nothing in the act of 1905, violative of the Constitution, but we must affirm the judgment discharging the defendant, for the reason that sec. 6404, Rev. Stats. of 1908, has been repealed in so far as it makes it a misdemeanor to violate the rules and regulations of the board, upon the subject covered by the later and specific act of 1905." The case involved the action of the state board of stock inspection commissioners, and this court expressly declined to pass upon the question of a possibly unlawful delegation of legislative power. Obviously that case is not in point.

In the Sapero case the state board of medical examiners claimed the right to establish the very standard of qualification for a medical practitioner by applying its own notion of medical ethics. This of course was not lawful regulation, being clearly outside of the plain limits set by the legislative act under which the board purported to proceed. The board went beyond the bounds of the powers conferred upon it by a constitutional statute. The case is likewise not in point.

Thus not one of the three Colorado cases cited is of aid to us in the present case.

2. Coming now to the Schechter case, we find by examining Mr. Chief Justice Hughes's opinion that an astounding variance exists between the questions there disposed of and the questions before us now. I shall endeavor to point out at least some of the differences in the facts of the two cases and in the principles of law respectively applicable to both.

The Schechter case concerned criminal convictions based upon alleged violations of what is known as the "Live Poultry Code" and upon an alleged conspiracy to commit such violations. The code had been adopted pursuant to the terms of the National Industrial Recovery Act of 1933. Perhaps our best and surest approach to that case is by quoting the exact words of the Chief Justice in defining the contentions of the defendants as being "(1) that the code had been adopted pursuant to an unconstitutional delegation by Congress of legislative power; (2) that it attempted to regulate intrastate transactions which lay outside the authority of Congress; and (3) that in certain provisions it was repugnant to the due process clause of the Fifth Amendment." The third contention was not passed upon.

It is readily seen that the first and second contentions raised in the Schechter case have nothing to do with the principles applicable to the facts before us. The present case involves a state statute. Consequently there can be no contention that the Federal Congress has here, in view of the limitations placed upon this body by the Federal Constitution, unlawfully delegated legislative power to some other branch of the Federal Government; for we are dealing with a state law under a state Constitution. Again, there can be no contention here that the Federal Congress unlawfully tried to regulate intrastate transactions under a mistaken conception of the jurisdiction granted to it by the Federal Constitution over commerce which is interstate, as contrasted with commerce which is intrastate. We are still dealing with a state law. Under the universally recognized principles of state constitutions, a state legislature has plenary power to regulate intrastate commerce, subject only to express limitations in the state constitution itself. These propositions are almost absurdly elementary in the present case; but they seem not to have been considered and are not even mentioned in the majority opinion. (The third contention, as to the due process clause of the Fifth Amendment in

the Federal Constitution, is also foreign to this case and, as already stated, was expressly eliminated from the Schechter case. Moreover, there is no contention here that the Fifth Amendment was violated.)

It is unfortunate that the majority opinion in the case at bar has thus ignored the patent fact that the Schechter case had to do with powers expressly granted by the people of the United States to the Federal Congress in the Federal Constitution, while the present case deals with the act of a state legislature. It also ignores the substantial distinctions between the two acts and the great changes of time and circumstance occurring between the dates of the respective enactments. This fundamental dissimilarity proclaims the need of sharp distinction between the two. With the Schechter decision I am in entire accord, but I cannot agree that the decision in the Schechter case should control the decision in this case. I shall presently discuss the question whether the Schechter opinion may be here accorded consideration as an authority at all, and, if so, to what extent.

3. This brings us to the actual issue before this court. The Attorney General says in his closing brief: "This reply brief will nevertheless be limited to a discussion of the single point, viz., delegation of legislative power, upon which our opinion to the Chairman of the Board was based. This for two reasons: First, the decision in the *Schechter* case and the decisions of this court, cited in our opinion, in our judgment conclusively determine the fact that the Act in question is invalid as delegating legislative power to an administrative board, and it is therefore needless to even discuss any of the other constitutional questions raised by the interrogatories; and secondly, if those other questions of constitutionality were fairly debatable it would be our duty, as public officers, to stand upon the side of constitutionality, and to seek to uphold the integrity of the statute as against such debatable objections." The issue is thus strictly and properly limited, by the very one who assails the consti-

tutionality of the state statute, to the single question of alleged unlawful delegation of legislative power.

4. From the similarity of the language in the Federal recovery act to the language in the Colorado act, the Attorney General argues that the two acts are practically identical, and that if one is invalid the other is also. This does not follow. As I have shown, the Schechter case was based upon wholly different facts and circumstances, arose in respect to the powers of the Federal Congress under the Federal Constitution, and interpreted legal principles as applied to those different facts in the light of that Constitution. As a consequence, the only part of the opinion therein which could have for us any immediate value is the discussion by Mr. Chief Justice Hughes of unlawful delegation by Congress of legislative powers as tested by the Federal Constitution. Owing to the aforesaid differences, the Schechter case has been found not decisive of our own. However, we gladly give it whatever force it may derive from reasoning by analogy, proper allowance to be made for the vital differences in the respective situations. In the Schechter case Mr. Chief Justice Hughes summed up his discussion relative to the unconstitutional delegation of legislative powers as follows: "To summarize and conclude upon this point: Section 3 of the Recovery Act [15 U. S. C. A. §703] is without precedent. It supplies no standards for any trade, industry, or activity. It does not undertake to prescribe rules of conduct to be applied to particular states of fact determined by appropriate administrative procedure.

"Instead of prescribing rules of conduct, it authorizes the making of codes to prescribe them. For that legislative undertaking, section 3 sets up no standards, aside from the statement of the general aims of rehabilitation, correction and expansion described in section 1." *Schechter v. United States*, 295 U. S. 495, 541, 79 L. Ed. 1570, 1586, 55 Sup. Ct. 837, 848.

The state act here in question differed materially in

this respect from the Federal act under discussion in the Schechter case. Whereas the Federal act contained no standards for any trade or industry, the state act by specific and repeated references thereto adopted as standards and limitations the provisions of the various codes which had been theretofore approved by the President of the United States as codes under the National Industrial Recovery Act. The court has a right to take judicial notice of the fact that such codes had been approved by the President for practically every major industry of the country.

Essentially the United States Supreme Court's rejection of the Federal recovery act on the ground that Congress had unlawfully delegated legislative power depended upon its finding that the "fair competition" sought to be brought about by the codes is insufficiently defined by the act, and that no determinable standards are designated by Congress to limit the President's initiating and framing of the codes. (Of course, I shall not discuss the intrastate commerce argument, no matter how much or how little it may have contributed to effecting the decision, because this particular subject is not involved here.)

It behooves us, then, to ascertain exactly what are the differences, if any, existing in regard to the alleged unlawful delegation of legislative power, as between Colorado and the country at large.

At the time the Federal act was passed in 1933, there was no industrial or economic experience or procedure to which Congress could look or refer for a factual basis or even as a concrete background of "fair competition." The beginning was in chaos. Between that and the date when our own recovery act was passed in 1935, there was extensive activity in Colorado, as in many if not all other states, upon the framing and administering of various codes under the Federal act. The experience thereby gained wrote into Colorado history a new and rather definite idea of "fair competition," as actually devel-

oped in practice. That the experience would not have been gained if the Federal judicial veto had sooner interfered cannot change the fact of our acquiring the experience.

It is reasonable to suppose that our legislature in 1935 used the expression "fair competition" advisedly, with full knowledge of what had happened (of which the courts must surely take judicial notice), and in the light and on the basis of the actual facts. The Colorado act bears intrinsic evidence of this.

5. The lamentable thing about this decision is that it wipes out an entire state law without leaving any power of legislative amendment. It is well to remind ourselves of what Mr. Chief Justice Hughes said a few months ago in a dissenting opinion (concurred in by Justices Brandeis, Stone and Cardozo) in *Railroad Retirement Board v. Alton R. Co.,* 295 U. S. 330, 374, 79 L. Ed. 1468, 1489, 55 Sup. Ct. 758, 773: "The gravest aspect of the decision [declaring the Railroad Retirement Act unconstitutional] is that it does not rest simply upon a condemnation of particular features of the Railroad Retirement Act, but denies to Congress the power to pass any compulsory pension act for railroad employees. If the opinion were limited to the particular provisions of the act, which the majority find to be objectionable and not severable, the Congress would be free to overcome the objections by a new statute. * * * I think that the conclusion thus reached is a departure from sound principles and places an unwarranted limitation upon the commerce clause of the Constitution." Similarly the present decision of this court adds, I believe, an unwarranted restriction to the legitimate constitutional limitations upon the plenary power of the state legislature.

6. What I have just said seems specially applicable because the Colorado act contains a strong severability clause, which proves that the legislature intended to blaze a forward trail even if some parts of the act could not be sustained. The wholesale destruction of the act

is to be regretted all the more because no person has come into this court complaining of its effect upon him. No individual rights have been asserted or denied. There is no concrete situation to adjudicate. Hitherto, when the constitutionality of a law has been attacked, this court has usually emphasized that the assailant must show himself injured by some particular provision before he is permitted to succeed. *Cavanaugh v. People,* 61 Colo. 292, 157 Pac. 200. The work of the legislative department has in the present instance, however, been annulled ex parte.

7. There is a universally recognized principle that says a statute is presumed to be constitutional until it is proved beyond a reasonable doubt to be otherwise. *Consumers' League v. Colorado & S. Ry. Co.,* 53 Colo. 54, 58, 125 Pac. 577, 578. I fail to see that presumption applied in this case. It seems to me that this court might well have said: "There is not enough before us to overthrow this presumption. We cannot apply a yardstick of generalities, or speculate on assumed but imaginary states of fact. This legislation is obviously an attempt to meet new social and industrial problems. We shall await an actual controversy arising under the act. Then, with the evidence before us, we shall carefully consider and decide."

In view of my convictions as above expressed, I hereby dissent.