## No. 14,433.

Smith-Brooks Printing Company et al. *v.* Young, et al.

(85 P. [2d] 39)

Decided November 18, 1938.

Mr. Erskine R. Myer, Mr. John R. Coen, for plaintiffs in error.

Mr. Byron G. Rogers, Attorney General, Mr. Luke J. Kavanaugh, Deputy, Mr. Joseph D. Iskow, Assistant, for defendants in error.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

This cause is before us on writ of error to reverse a

judgment of the district court of the City and County of Denver, dismissing plaintiffs' complaint, the plaintiffs electing to stand on their complaint after defendants' demurrer for insufficiency of facts was sustained. The parties appear here in the same order as in the trial court and will be designated as plaintiffs and defendants.

The action was initiated under the Uniform Declaratory Judgments Law, chapter 93, §§ 78-92 '35 C. S. A., to determine the status of plaintiffs with respect to eligibility to bid for state printing contracts under section 29, article V, of the Colorado Constitution, and chapter 130, '35 C. S. A., '37 Supplement, being chapter 214, S. L. 1937.

Section 29 is as follows: "All stationery, printing, paper and fuel used in the legislative and other departments of government shall be furnished; and the printing and binding and distributing of the laws, journals, department reports, and other printing and binding; and the repairing and furnishing the halls and rooms used for the meeting of the general assembly and its committees, shall be performed under contract, to be given to the lowest responsible bidder, below such maximum price and under such regulations as may be prescribed by law. No member or officer of any department of the government shall be in any way interested in any such contract; and all such contracts shall be subject to the approval of the governor and state treasurer."

Section 7, chapter 214, S. L. '37 (Section 72 chapter 130, '35 C. S. A.—'37 Supp.), so far as pertinent to the issues here involved reads: "All public printing for the state of Colorado shall be performed under contract, to be given to the lowest responsible bidder, at or below the maximum price and under the regulations herein set forth and under a specific provision that all persons employed by the contractor in the manufacture or furnishing of materials, supplies or articles in the performance of the contract shall observe the prevailing standards of working hours and conditions fixed and prescribed by the industrial commission of Colorado with reference thereto,

and such contracts shall be made by the state purchasing agent, subject to the approval of the governor and state treasurer, after bids have been submitted to the state purchasing agent; provided however, that printing to be done for state institutions shall be purchased under the direction of the respective heads of such institutions, in accordance with the rules and regulations established by the state purchasing agent.''

The title of the act of which the above section 7 is a part is as follows: ''An Act Relating to Public Printing, Providing for Penalties for Violation of the Provisions of this Act and Repealing Acts and Parts of Acts in Conflict Herewith.''

It is alleged in plaintiffs' complaint that the Industrial Commission fixed and determined the prevailing standard of wages, working hours and conditions as set forth in a schedule attached to plaintiffs' complaint, marked Exhibit ''A.'' It appears by Exhibit ''B'' that subsequent to such determination the commission held a hearing to determine the prevailing wages, hours of work, and working conditions in the printing industry. Employees, closed shop employers, open shop employers, including plaintiffs, printers outside the city of Denver and the Employing Printers of Denver, Incorporated, were present or represented at the hearing. On this hearing the commission found that the schedule theretofore adopted as the prevailing schedule of wages, hours of work and working conditions was correct. Plaintiffs allege, and the allegation is admitted by the demurrer, that the purchasing agent for the state requires as a prerequisite to the acceptance or consideration of any bid for state printing that the bidder obtain a ''clearance'' or certificate from the Industrial Commission that in the operation of his, their or its business they are complying with the schedule of wages, hours of work and working conditions found by the commission to prevail in the printing industry. Plaintiffs make no claim that the finding of the commission, as to such matters, was not in accordance

with the facts, nor do they in any manner question such findings and determination. Members of the commission may have thought, judging from some of the statements in the commission findings, that it was the commission's duty under the act to go further than merely to make findings of fact as to prevailing wages, hours of labor and conditions of work, but it appears that it conceived such findings to be its first duty and did make them, and, having made them, it has performed the sole duty imposed upon it by the act.

Plaintiffs contend that the act authorizes the commission not to *find*, but to "*fix* and *prescribe*," the "prevailing standards of working hours and conditions." Prevailing standards of working hours and conditions in the printing industry are existing facts. As such they may be *found* and *determined* and in this sense they are fixed and prescribed. Webster's International Dictionary defines "fix" as: "To make firm, stable or fast; to secure from displacement; to fasten * * * Syn. determine, settle, place, set, confirm, limit, delimit.—*Fix, establish, define*. To fix as here compared is to give permanence to something, esp. as it already exists." The same authority defines "prescribe": "To lay down authoritatively as a guide, direction, or rule of action; to impose as a peremptory order; to dictate; appoint; direct; ordain." When words having different but well recognized shades of meaning are used in a statute they should be given that recognized shade of meaning that makes the statute reasonable and brings it within the constitutional powers of the legislature to enact it. So construed the statute here in question merely authorizes the Industrial Commission to determine and lay down authoritatively as a guide the prevailing standards of wages and hours in the printing industry—a fact necessary to be known in the application of the law as enacted by the legislature. In *Field v. Clark*, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294, the United States Supreme court announced this rule: "The true distinction * * * is between the delegation of

power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter, no valid objection can be made." In *Sapero v. State Board,* 90 Colo. 568, 11 P. (2d) 555, this court said: "The general assembly may not delegate the power to make a law; but it may delegate power to determine some fact or a state of things upon which the law, as prescribed, depends. *Colorado and Southern Railway Co. v. State Railroad Commission,* 54 Colo. 64, 84, 129 Pac. 506; *Field v. Clark,* 143 U. S. 649, 694, 12 Sup. Ct. 495, 36 L. Ed. 294."

The Supreme Court of Pennsylvania in *Locke's Appeal* 72 Pa. St. 491, 13 Am. Rep. 716, speaking through Mr. Justice Agnew, said: "Then, the true distinction, I conceive, is this: The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the lawmaking power, and must therefore, be a subject of inquiry and determination outside of the halls of legislation."

█ When the prevailing standard of wages and hours are determined factually, section 7 provides in effect that a contract for state printing shall contain a specific provision "that all persons employed by the contractor in the manufacture or furnishing of materials, supplies or articles in the performance of the contract shall observe the prevailing standards of working hours" found and determined by the commission or "fixed and prescribed" by the commission in the sense we have held these words to have been used in the act.

It follows that the prior general compliance with such prevailing standards of working hours and conditions in the conduct of its private business is not a condition prece-

dent to the right to bid on state printing, but that compliance with such standards in carrying out the contract is requisite to a lawful and full performance of any such contract entered into with the state.

That the act provides that the *employees* shall observe the standards of working hours and conditions fixed, rather than that the employer shall comply with them, raises no insurmountable obstacle to enforcement. The employer has it within his power to make it possible that his employees may, and to see that they do, observe them. Section 34 of the act provides that "any person violating any provision of this act as well as any person consenting to such violation, shall be guilty of a misdemeanor." If the employer would enter into a contract authorized by it he must not so act in dealing with his employees as to show conclusively his consent to their violation of it even though they might be willing so to do.

Section 29, article V, of the Constitution does not purport to determine all of the conditions that shall be embodied in the contracts with which it deals. It directs, among other things, that printing "shall be performed under contract, *to be given* to the lowest responsible bidder * * * *under such regulations as may be prescribed by law.*" The legislature has prescribed that the work under any such contract shall be performed by employees working under a factually determined schedule of wages and hours. Such requirement is a regulation prescribed by the law. Plaintiffs say that it may not be so prescribed: First because it involves an unconstitutional delegation of power to the Industrial Commission. Const. art. III and §1, art. V. We have pointed out that the act rightly construed does nothing more than vest in the commission the power to determine a fact in the light of which when determined the law operates. That such a delegation is proper has been generally recognized by the decisions of this court and by those of other appellate tribunals, some of which we have heretofore cited. Secondly, plaintiffs say that the condition may not be pre-

scribed because it is class legislation, discriminatory, tends to create a monopoly, and is in violation of the right to contract. Plaintiffs have no vested right to perform labor for the state. The Supreme Court of the United States in *Atkin v. Kansas,* 191 U. S. 207, 24 Sup. Ct. 124, 48 L. Ed. 148, in passing upon the validity of a law providing that all laborers, working men or other persons employed by or on behalf of the state or any of its political subdivisions should work but eight hours per day, laid down a rule in such cases which this court subsequently approved in *Keefe v. People,* 37 Colo. 317, 87 Pac. 791. In that case we had before us a judgment of conviction for violation of a statute providing: ''In all work hereafter undertaken in behalf of the state or any county, township, school district, municipality or incorporated town, it shall be unlawful for any board, officer, agent, or any contractor or sub-contractor thereof to employ any mechanic, workingman or laborer in the prosecution of any such work for more than eight hours a day.'' In the opinion it is said: ''Counsel are agreed that this statute does not fall within the police power of the state. The attorney general concedes that it cannot be sustained as a valid exercise of such power, since it is inhibited by the decision of this court in *In re Morgan,* 26 Colo. 415, and, as that proposition is within the ban of practically all decisions of federal and state courts in similar cases. If it can be upheld at all, the attorney general says, it must be solely upon the principle that the state may prescribe for itself and its subordinate political subdivisions the conditions upon which all public work shall be performed; and as counties, townships, school districts and municipalities are but mere political subdivisions of the state government, its auxiliary organizations, or agencies, for the purpose of local government, the state, as the principal, may impose upon these agencies precisely the same conditions with respect to the doing of their public work that it can prescribe for itself.'' The court following the rule announced in *Atkin v. Kansas, supra,* said: ''Mr.

Justice Harlan, in the course of his opinion in that case, so concisely and lucidly states the principle upon which legislation of this character is upheld that, without further comment, we cite the following excerpts, as constituting the reasons for sustaining our act:

" '* * * It cannot be deemed a part of the liberty of any contractor that *he* be allowed to do public work in any mode he may choose to adopt, without regard to the wishes of the state. On the contrary, it belongs to the state, as the guardian and trustee for its people, and having control of its affairs, to prescribe the conditions upon which it will permit public work to be done on its behalf or on behalf of its municipalities. No court has authority to review its action in that respect. Regulations on this subject suggest only considerations of public policy; and with such considerations the courts have no concern.'

" 'If it be contended to be the right of every one to dispose of his labor upon such terms as he deems best— as undoubtedly it is—and that, to make it a criminal offense for a contractor for public work to permit or require his employee to perform labor upon that work in excess of eight hours each day, is in derogation of the liberty both of employees and employer, it is sufficient to answer that no employee is entitled, of absolute right and as a part of his liberty, to perform labor for the state; and no contractor for public work can excuse a violation of his agreement with the state by doing that which the statute under which he proceeds distinctly and lawfully forbids him to do.' "

"And, in referring to the fact which was stipulated by the parties in that case, as here, that the work performed by the employee of the defendants was not dangerous to life, limb or health, and labor for more than ten hours was not injurious to him in any way, the court said that such considerations were not controlling, because the decision was based upon the broad ground that the work being of a public character, absolutely under the control

of the state and its municipal agents acting by its authority, it is for the state to prescribe the conditions under which it will permit work of that kind to be done, and the legislation in question did not infringe upon the personal rights of others." Our act is not discriminatory nor class legislation as we have construed those terms because it has no other effect than to place all bidders for the state's printing on an equality, so far as labor costs are concerned, by making that factor entering into all bids that may be submitted constant. In the exercise of its right to contract it may include, as any person exercising his right to contract may do, such term or terms in the contract as it sees fit, unless prohibited from so doing by the Constitution or by enacted laws which remain unrepealed. There has not been called to our attention, and we know of no provision in the Constitution, that prohibits the state as a matter of public policy recognizing the prevailing wage and conditions of labor in any industry as proper to be complied with by any one in that industry who seeks to contract for work required by the state. The question of whether state institutions may properly be exempted from requiring such conditions in their printing contracts is not before us, and we leave that matter for determination until a case arises necessitating its solution, for whether it be determined one way or the other in no wise affects plaintiffs in the instant case.

Plaintiffs contend that section 7 of the act is discriminatory for the further reason that it does not include the same requirement for *all* contracts entered into by the state. That the requirement of compliance with the prevailing wage and conditions of labor schedule is limited to printing contracts only is of no moment. Section 29 of the Constitution, supra, deals with only three general classes of supplies to be furnished by contract, namely: (a) Stationery, printing and paper, (b) fuel; (c) repairing and furnishing the halls and rooms used by the general assembly and its committees. Certainly no criticism should be indulged against the legislature because it

has not made a broader classification than the Constitution has set forth in section 29. It need not even make one so broad, for we have held that because a state has power to prescribe a regulation for more than one industry this does not invalidate its regulation of one to the exclusion of another noncompetitive industry. *Robertson v. People,* 20 Colo. 279, 38 Pac. 326; *McClelland v. Denver,* 36 Colo. 486, 86 Pac. 126; *Rosenbaum v. Denver,* 102 Colo. 530, 81 P. (2d) 760.

While the foregoing cases arose under acts passed in the exercise or attempted exercise of the police power, we see no essential difference between them and an act that lays down a policy for the state as to what it will recognize as reasonable and just to those who, like the employees of one contracting with it for printing, are not directly parties to the contract, but are necessary instruments in its fulfillment. The late Justice Cardozo, speaking for the court in *Campbell v. City of New York,* 244 N. Y. 317, 155 N. E. 628, in passing upon a case wherein the right of the state to stipulate in its contracts for payment of a prevailing wage was in issue, said: "If the Constitution does not make it illegal to place this promise in the contract, the plaintiffs may not be heard to insist that the promise shall come out. Their right of action as taxpayers is measured by the statute. * * * The courts do not sit in judgment upon questions of legislative policy or administrative discretion. The taxpayer must point to illegality or fraud (*Smith v. Hedges,* 223 N. Y. 176)."

From the principles we have announced it follows that section 7 of the act is in harmony with and not repugnant to section 29 of article V of the Constitution; that it does not delegate legislative power to the Industrial Commission; that it is not discriminatory; is not class legislation (Const. art. V, §25); nor does it invade any rights to contract that plaintiffs have under the Constitution. We hold that compliance with the schedule of wages and hours determined by the commis-

sion, as to all work called for by the contract, is requisite for a full and lawful performance of any contract that may be secured under a bid submitted. Since it appears from the allegations of plaintiffs' complaint not only that they do not comply with such schedule in the conduct of their private business which they are not required to do, but also that they will not comply with it as to those of their employees who will be engaged in work in performance of a contract for state printing if secured, the judgment of the trial court dismissing the complaint must be affirmed.

Mr. Chief Justice Burke dissents in part.

Mr. Justice Holland not participating.

Mr. Chief Justice Burke, dissenting.

I think the court's conclusion wrong. This was a suit under the Declaratory Judgments Act to determine a right. The actual existence of a controversy and the infringement of the right, if right there were, are unquestioned. The trial court, however, merely sustained a demurrer for want of facts. That disposition can only be upheld on the theory that the complaint presented nothing for adjudication under the act, a theory first negatived by the pleading itself and now by the court's opinion. The constitutionality of the statute and the existence of the questioned right, on both of which the trial court failed to pass, are now adjudicated by this tribunal. We have thus acted as a trial court instead of limiting our jurisdiction to that review to which we are restricted by the Constitution.

I think, irrespective of the correctness of certain conclusions reached on questions of construction, this judgment should be reversed and the cause remanded.