## No. 26779

**Perry A. Weissman v. Board of Education of Jefferson County School District No. R-1, State of Colorado and Frank A. Traylor, Richard H. De Voto, Paul R. McEncroe, Lewis E. Steighorst, and Alvin J. Meikeljohn, Jr., as members of said Board**

(547 P.2d 1267)

Decided March 29, 1976.

John D. Weber, for plaintiff-appellant.

Dawson, Nagel, Sherman & Howard, Craig A. Christensen, William F. Schoeberlein, for defendants-appellees.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Appellant was a tenured teacher at Arvada Senior High School. On February 6, 1973, the local board of education entered its order dismissing him from employment pursuant to provisions of the Teacher Employment, Dismissal, and Tenure Act of 1967. Appellant thereupon sought review of his dismissal in the district court under sections 22-63-117(11) and 24-4-106, C.R.S. 1973. That court upheld the order of dismissal of the board of education and entered judgment in favor of appellee school district. Appellant then prosecuted this appeal. We affirm in part and reverse in part.

A rather detailed factual statement will be helpful to a full understanding of the matters involved in this controversy. The record shows that appellant began his high school teaching career as an English teacher at Arvada High School at the beginning of the 1969-70 school year, and was granted tenure at the close of the 1971-72 school year. The record reveals that during this period he earned the reputation as an excellant teacher and was noted for his particularly good rapport with students. His non-traditional and innovative methods of teaching, which endeared him to his students, caused friction with his fellow teachers and also with the school administration. These intrafaculty differences eventually resulted in appellant's assignment for the 1972-73 school year as an English and humanities teacher to the then newly-established "School Within a School" (SWS) program at Arvada High School.

SWS was a special program for students who could not succeed in the traditional school setting. A closer student-teacher relationship was contemplated and the program was to be student-centered and student-directed. One of the reasons appellant was chosen for SWS was that his nontraditional views on education might serve the program well.

SWS scheduled three field trips to go to Santa Fe and Taos, New Mexico, in order to familiarize the students with the Indian and Spanish

cultures and their influences on the Southwest. The second of these trips lasted from October 6 to October 9, 1972, and it was on this trip that the events occurred which resulted in appellant's ultimate dismissal.

Five adults and twenty young people (twelve girls and eight boys) made the trip, going in several cars. During the automobile ride between Denver and Santa Fe, appellant rode in the rear seat of a Volkswagen van being driven by one of the other adult chaperones, Mrs. Beck. During the journey, he engaged in activity with several of the female students in the van, which he characterized as "good-natured horseplay" and which consisted of touching and tickling the girls on various parts of their bodies and occasionally between the legs in proximity to the genital areas. There was reciprocal conduct on the part of the girls. During the course of this conduct, the dialogue between appellant and these students was occasionally vulgar, suggestive in nature, and contained many sexual innuendos. There was further evidence that similar behavior, though of a perhaps more subdued nature, occurred on the second day, en route from Santa Fe to Taos.

Several other incidents took place during the trip. In violation of the "lights out" rules, appellant and a female student spent some time alone in the van, discussing her personal problems. On another occasion, he and one of the girls were seen together in a motel room, lying on a bed, watching television. Appellant vehemently denied that any improper sexual suggestions were intended by his activities with the various students.

There was testimony that throughout much of the trip appellant displayed an openly negative attitude toward planned group activities, some of which he characterized as a "drag," and in which he was disinterested. There were repeated confrontations between appellant and Mrs. Franz, the coordinator of the field trip.

Though all of the students who had ridden in the van on the first day eventually apologized to Mrs. Beck, saying they viewed their behavior as "pretty gross," appellant asserted pride in the way he had acted and avowed that "given a similar set of circumstances and similar situations, I would probably act in a similar way." He testified that the "horseplay" was a "positive educational experience."

Upon the group's return to Arvada, both Mrs. Franz and Mrs. Beck complained to the principal of the school about appellant's behavior, and on October 17 the board of education accepted the charges for review in the manner prescribed by statute. Pursuant to what is now section 22-63-117, C.R.S. 1973, a hearing panel was convened to consider the charges against appellant of neglect of duty, insubordination, immorality, and "other good and just cause." Extensive hearings were held, at which appellant was competently, even eloquently, represented by counsel. In due time, the panel made findings of fact as to each of the charges. The panel members unanimously agreed that the charge of insubordination had not been proven. Two of the three members, however, felt that the physical

touchings, combined with the vulgarities, justified a finding of immorality. These two members also concluded that appellant had neglected his duty to act morally and that the totality of his conduct constituted "other good and just cause" for dismissal. Accordingly, the majority recommended that appellant be dismissed. The third member dissented, arguing that the statutory grounds for dismissal are unconstitutionally vague, and that in any event appellant's conduct was not neglectful of duty or immoral. He did concede, however, that the "testimony revealed [appellant] to be without a sense of dignity or decorum and without appreciation of the dynamics and possibilities of interaction between people."

On February 6, 1973, before adopting the findings and conclusions of the panel, the board of education heard additional argument, and listened to statements from students and former students of Arvada High School, from the father of a female student, and from a Planned Parenthood official, all of whom supported appellant and pleaded for his retention. The board adopted the findings of fact and recommendations of the panel. It concluded that the facts were sufficient to sustain appellant's dismissal on the grounds of immorality, neglect of duty, and other good and just cause. The board further found that the facts on each dismissal ground were sufficient in and of themselves to sustain his dismissal. It declined to grant probation, as recommended by the dissenting member of the panel.

I.

Appellees contend that we need not pass upon the constitutional issues advanced by appellant — that the statutory ground of immorality is impermissibly vague. The board of education, it is argued, dismissed appellant on the basis of other independent grounds — neglect of duty, and other good and just cause — which, standing alone, are ample to sustain the appellant's dismissal.

This court has on numerous occasions noted that the constitutionality of a statute will not be passed upon unless essential for a determination of the case presented. *Tyler v. Sch. Dist. No. 1*, 177 Colo. 188, 493 P.2d 22; *Times-Call v. Wingfield*, 159 Colo. 172, 410 P.2d 511. An examination of appellant's notice of appeal, however, as well as the briefs submitted by his counsel, convinces us that he is challenging all grounds for his dismissal, and we therefore will consider the constitutional argument.

II.

Appellant's principal argument for reversal is that section 22-63-116, C.R.S. 1973, unconstitutionally sanctions the dismissal of a teacher for "immorality." That term is, he argues, excessively vague, means different things to different people, and inevitably subjects teachers to the irrational and arbitrary whims of potentially hostile school board members. The statute reads:

"22-63-116. Dismissal — reasons. The grounds for dismissal of a tenure teacher shall be physical or mental disability, incompetency, neglect of duty, immorality, conviction of a felony, insubordination, or other good and just cause. No tenure teacher shall be dismissed for temporary illness, leave of absence previously approved by the board, or military leave of absence pursuant to article 3 of title 28, C.R.S. 1973."

Appellant further contends the statute is unconstitutional because it requires no nexus between the conduct objected to and the teacher's classroom effectiveness. In other words, even assuming that he did act immorally, the panel's findings of fact, as adopted by the board, fail to show that his conduct impaired his ability to perform his duties as a teacher; indeed, there was no finding that he did not continue to enjoy the admiration and respect of his students and their parents.

▪ It is important to note that in this case there is no issue relating to a denial of appellant's First Amendment freedoms. As stated in *United States v. Powell*, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228:

"'* * * '[I]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.' *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). * * *'"

Having carefully considered these arguments, we hold that appellant has failed to overcome the presumption of constitutionality with which statutes are invested. *Gates v. So. Suburban Metro.*, 183 Colo. 222, 516 P.2d 436; *Flank Co. v. Tennessee Co.*, 141 Colo. 554, 349 P.2d 1005. We believe that, properly construed, *see Zaba v. Motor Vehicle Div.*, 183 Colo. 335, 516 P.2d 634, the statute may be sustained as constitutional.

## A.
## NEXUS ARGUMENT

▪ Though section 22-63-116 does not explicitly require that the "immorality" be in relation to, or affect, the teacher's work, we believe that such a requirement can be readily implied from the language of the statute. The statutory ground of immorality, taken in conjuction with the other grounds of physical and mental disability, incompetency, neglect of duty, conviction of a felony, and insubordination, clearly implies a standard that is directly related to the teacher's fitness for service. We hold therefore that appellant's actions cannot constitute immorality within the meaning of the statute unless these actions indicate his unfitness to teach. As the California Supreme Court said in *Morrison v. State Board of Education*, 1 Cal. 3d 214, 461 P.2d 375, 82 Cal. Rptr. 175:

"* * * Without such a reasonable interpretation the [statutory reference to immoral conduct] would be susceptible to so broad an application as possibly to subject to discipline virtually every teacher in the state. In the opinion of many people laziness, gluttony, vanity, selfishness, avarice, and

cowardice constitute immoral conduct. * * *"

We do not believe that the legislature intended to potentially subject every teacher to discipline, even dismissal, for private peccadillos or personal shortcomings that might come to the attention of the board of education, but yet have little or no relation to the teacher's relationship with his students, his fellow teachers, or with the school community. This view is in accord with the vast weight of contemporary judicial decisions. *Erb v. Iowa State Board of Public Instruction,* 216 N.W.2d 339 (Iowa 1974); *Wright v. Superintending Sch. Com., City of Portland,* 331 A.2d 640 (Me. 1975); *In Re Grossman,* 127 N.J. Super. 13, 316 A.2d 39; *Jerry v. Board of Ed. of City Sch. Dist. of Syracuse,* 35 N.Y.2d 534, 324 N.E.2d 106, 364 N.Y.S.2d 440; *Jarvella v. Willoughby-Eastlake City Sch. Dist.,* 12 Ohio Misc. 288, 41 Ohio Op. 2d 423, 233 N.E.2d 143; *cf. Mindel v. United States Civil Service Commission,* 312 F. Supp. 485 (N.D. Cal. 1970); *Stevens v. Hocker,* 91 Nev. 392, 536 P.2d 88.

■ In determining whether the teacher's conduct indicates an unfitness to teach, the board of education may properly consider such matters as the age and maturity of the teacher's students, the likelihood that his conduct may have adversely affected students and other teachers, the degree of such adversity, the proximity or remoteness in time of the conduct, the extenuating or aggravating circumstances surrounding the conduct, the likelihood that the conduct may be repeated, the motives underlying it, and the extent to which discipline may have a chilling effect upon either the rights of the teacher involved or other teachers, *see Morrison v. State Board of Education, supra;* Note, *Unfitness to Teach,* 61 Calif. L. Rev. 1442 (1973). We do not, of course, list these factors as exclusively definitive. Human conduct is infinitely various, and it would be folly to attempt to isolate any limited set of criteria as determinative.

■ We emphasize that the board's power to dismiss and discipline teachers is not merely punitive in nature and is not intended to permit the exercise of personal moral judgments by board members. Rather, it exists and finds its justification in the state's legitimate interest in protecting the school community from harm, and its exercise can only be justified upon a showing that such harm has or is likely to occur. *See Erb v. Iowa State Board of Public Instruction, supra.*[1] In view of these considerations and

---

[1] As appellant's own psychiatric witness testified at the hearing, teachers by their behavior and outlook may affect the students for better or worse; and they are in a unique position to influence young people. Even unmanifested teacher values may undoubtedly be unconsciously transmitted to students, *cf.* Turner & Denny, *Teacher Characteristics, Teacher Behavior, and Changes in Pupil Creativity,* 69 *Elem. Sch. J.* 265 (1969); Rosenthal, *The Pygmalion Effect Lives, Psychology Today,* Sept. 1973 at 56.

of the desirability of preventing unfit teachers from adversely influencing students, we conclude that the board of education may properly dismiss those teachers whose misbehavior has had the requisite degree of adverse impact.

 It is true that neither the panel nor the board made a specific finding that appellant's conduct had this effect upon his ability to teach at Arvada High School. We believe, however, that necessarily implicit in the board's dismissal was the underlying premise that appellant's conduct was job-related. Indeed, it occurred on the SWS field trip to Santa Fe. In our view, the nature of his conduct, combined with his admitted willingness to repeat it "given a similar set of circumstances" justifies the board's order of dismissal.

 In *Denton v. South Kitsap School Dist. No. 402*, 10 Wash. App. 69, 516 P.2d 1080, it was held that a male teacher's sexual involvement with a minor female student is inherently immoral and harmful, justifying dismissal. In our view, whenever a male teacher engages in sexually provocative or exploitive conduct with his minor female students a strong presumption of unfitness arises against the teacher.

Moreover, several courts have found that the use of vulgarities on the part of the teacher may have a bearing on his fitness to teach, *see, e.g., Palo Verde Unified Sch. Dist. of Riverside Co. v. Hensey*, 9 Cal. App. 3d 967, 88 Cal. Rptr. 570; *Pyle v. Washington County School Board*, 238 So. 2d 121 (Fla. App. 1970); *Mailloux v. Kiley*, 323 F. Supp. 1387 (D.Mass.), *aff'd* 448 F.2d 1242 (1st Cir. 1971). We find no legitimate professional purpose in the sordid conduct engaged in by appellant on the Santa Fe trip. Indeed, his own testimony suggested the true explanation of his conduct: it was a situational response, an attempt to act his natural self, to gain rapport with his students. It is difficult to conceive of a single positive aspect that such behavior might have in an educational context.

### B.
### VAGUENESS ARGUMENT

 So interpreted, we hold that section 22-63-116's reference to "immorality" is not unduly vague and constitutes a valid ground for dismissal. *See Morrison v. State Board of Education, supra.*

 In *People v. Blue,* 190 Colo. 95, 544 P.2d 385, we recently had occasion to discuss the constitutional requirement that penal statutes be drawn in such a way as to give men of common intelligence notice of what they forbid. *See Connally v. General Const. Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322.

Similar standards of certainty apply with respect to civil statutes, *Cramp v. Bd. of Public Instruction*, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285; *Memorial Trusts v. Beery*, 144 Colo. 448, 356 P.2d 884.

Nevertheless, total precision of expression is elusive and has never been demanded of the legislature. *People v. Blue, supra.* The United

States Supreme Court has found unobjectionable statutes using such arguably vague terms as "crime involving moral turpitude" (*Jordan v. DeGeorge*, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886), and "such good cause as will promote the efficiency of the service" (*Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15); *cf. Watts v. Seward School Board*, 381 U.S. 126, 85 S.Ct. 1321, 14 L.Ed.2d 261.

"* * * The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing * * * statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584.

This court itself has often, and in the face of vagueness attacks, sanctioned the application of statutory provisions referring to crimes involving "moral turpitude," *People v. Gibbons*, 157 Colo. 357, 403 P.2d 434; *White v. Board of Medical Examiners*, 70 Colo. 50, 197 P. 564; or to immoral, unprofessional, or dishonorable conduct, *Hummel v. Board*, 103 Colo. 476, 87 P.2d 248; *Sapero v. State Board*, 90 Colo. 568, 11 P.2d 555; *State Board v. Miller*, 90 Colo. 193, 8 P.2d 699, *cert. denied*, 287 U.S. 563, 53 S.Ct. 6, 77 L.Ed. 496; *State Board v. Savelle*, 90 Colo. 177, 8 P.2d 693, *cert. denied*, 287 U.S. 562, 53 S.Ct. 5, 77 L.Ed. 496; *Dilliard v. State Board*, 69 Colo. 575, 196 P. 866.

Our most recent decision to deal with this problem was *People, Int. of K.P.*, 182 Colo. 409, 514 P.2d 1131. In that case we rejected a vagueness and overbreadth attack on what is now section 22-33-106, C.R.S. 1973, which allows expulsion of a child from school, for "[b]ehavior which is inimicable to the welfare, safety, or morals of other pupils." We held the statute was sufficiently clear to apprise students of the type of conduct which is prohibited. That statute focused its prohibition only on conduct directed toward other pupils, a narrowed class of individuals, and the conduct proscribed was strictly limited to conduct hostile to welfare, safety, or morals and could not be utilized to prohibit all forms of socially unacceptable conduct.

We believe that section 22-63-116, as herein construed, likewise conforms to constitutional requirements. It is directed to conduct toward members of the school community, and is concerned with immoral acts only insofar as they relate to the teacher's unfitness to teach.[2]

---

[2] The present facts are a far cry from those presented in *Trail Ridge Ford, Inc. v. Colorado Dealer Licens. Bd.,* 190 Colo. 82, 543 P.2d 1245, a case involving the vagueness doctrine as applied to a commercial transaction. The public interest here at stake is the protection of the delicate relationship between teacher and student, an area where standards of behavior cannot be as readily catalogued.

We therefore hold the statute in question to be sufficiently precise to meet minimal due process standards. Appellant may in good faith have considered his conduct on the Santa Fe trip entirely moral. But statutes cannot be drawn from the point of view of the idiosyncratic few. Most persons of ordinary intellignece would have notice, even from the broad wording of section 22-63-116, that certain acts are prohibited, including *inter alia* the intimate touching of minor female students by a male high school teacher. And, as Mr. Justice Holmes noted in *Nash v. United States*, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232, "the law is full of instances where a man's fate depends on his estimating rightly * * * some matter of degree."

### III.

It is next argued that the board of education violated due process requirements by considering evidence and matters outside of the formal hearing before entering its order of dismissal. The basis of this argument is the board's allegedly excessive pre-hearing familiarity with the nature of the charges against appellant; specifically, it is suggested that the board improperly considered two documents before filing charges: (1) a packet of materials consisting of excerpts from records maintained by the school district pertaining to appellant; and (2) the draft of a resolution for the board prepared by the board's attorney. It is undisputed that the packet was made available to apppellant's counsel prior to the hearing; the draft was deemed privileged matter and was not made available.

The basic issue thus posed is the extent to which a board of education may independently inquire into the basis of charges before it accepts them for review pursuant to the provisions of section 22-63-117. That section reads in relevant part as follows:

"(2) Upon written recommendation by the chief executive officer of the district or any member of the board, charges against any teacher may be filed with the board of the school district employing the teacher. At its next regular meeting, the board shall either reject the charges or accept the charges for review in the manner prescribed by this section."

Though the statute provides no clear answer to this inquiry, it would be manifestly contrary to its spirit to allow the board to so thoroughly investigate the matter as to render the subsequent statutory hearing superfluous. At the same time, we believe that the board may properly conduct a limited preliminary inquiry to determine if there is any real substance to the charge against the teacher. The formal hearing process can be both time-consuming and costly, and may subject a teacher to great embarrassment. These adverse consequences may be avoided by a measure of pre-hearing familiarity with the case. In sanctioning such inquiry, we agree with the reasoning of other courts which have considered the issue. *Griggs v. Board of Trustees of Merced Union H.S. Dist.*, 61 Cal. 2d 93, 389 P.2d 722, 37 Cal. Rptr. 194; *Phillips v. Board of Education of Smyrna Sch.*

*Dist.*, 330 A.2d 151 (Del. Super. 1974); *Million v. Board of Education of Wichita*, 181 Kan. 230, 310 P.2d 917; *Petitions of Davenport*, 129 Vt. 546, 283 A.2d 452; *Simard v. Board of Education of Town of Croton*, 473 F.2d 988 (2d Cir. 1973); *Swab v. Cedar Rapids Community School District*, 494 F.2d 353 (8th Cir. 1974); *cf. King v. Caesar Rodney School District*, 380 F. Supp. 1112 (D. Del. 1974).

█ We emphasize that the statute contemplates a full and impartial hearing by the panel and review by the board. The board may therefore make such preliminary inquiry as is not inconsistent with its later ability to make an impartial review of the evidence adduced by the panel. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287; *Tyson v. New York City Housing Authority*, 369 F. Supp. 513 (S.D.N.Y. 1974); *Petitions of Davenport, supra.* The board must do nothing in the preliminary inquiry that would serve to remove the appearance of fairness from its eventual determination. *Gilbertson v. McAlister*, 383 F. Supp. 1107 (D. Conn. 1974); *In Re Flannery's Appeal*, 406 Pa. 515, 178 A.2d 751. In the present case, appellant has made no showing whatever that the board's determination was tainted by a lack of impartiality. In the absence of such evidence, we must assume that the board properly discharged its statutory duty. *Colo. Spgs. v. Dist. Ct.*, 184 Colo. 177, 519 P.2d 325; *Bauch v. Anderson*, 178 Colo. 308, 497 P.2d 698.

IV.

█ Appellant further argues that his due process rights were violated because when the board of education retired in private to deliberate regarding his employment the board was accompanied by its attorney, who had participated in the hearing in an adversary role akin to that of a prosecutor. Appellant's attorney was excluded from these deliberations.

Courts which have considered the problem have suggested that a school board's attorney, who has taken part in the adversary proceedings in the role of prosecutor, should not be present during the board's deliberations. *Yuen v. Board of Education of School Dist. No. U-46*, 77 Ill. App. 2d 353, 222 N.E.2d 570; *Miller v. Board of Education of School Dist. No. 132*, 51 Ill. App. 2d 20, 200 N.E.2d 838; *State v. McPhee*, 6 Wis. 2d 190, 94 N.W.2d 711. We agree. In the future, counsel who has played such a role in the proceedings should take no part in the final deliberations of the board, in order to avoid any appearance of impropriety or unfairness.

We believe that the board's counsel acted imprudently when he retired with the board, but in light of all the evidence, the fact that he cast no vote, and the apparent absence of any substantial prejudice to appellant, we decline to reverse on this basis.

V.

█ Finding 43 of the panel, later adopted by the board of education and approved on review by the district court, provided:

"43. That each party herein should be and is hereby, found to be responsible for payment of cost (sic) and expenses including per diem expenses of the party's respective chosen member of this panel, and the parties jointly should be, and are hereby, found to be responsible to share equally the costs and expenses including the per diem expenses agreed to by the parties before the commencement of these proceedings of the panel chairman."

Appellant contends that the panel was without jurisdiction to make such a determination, and that the "finding" is therefore a nullity. We agree. Appellees do not argue to the contrary.

The only reference to costs contained in section 22-63-117, C.R.S. 1973, is to the effect that costs for recording the evidence adduced at the hearing shall be borne by the school district; nowhere does the statute say that a teacher's right to a hearing is conditioned upon his ability to pay for it. The court was in error in holding that appellant was required to pay any of the costs associated with the dismissal hearing. We do not believe that the legislature intended to penalize teachers who exercise their statutory — indeed their constitutional — right to a hearing.

The judgment of the district court requiring appellant to pay a share of the costs of the panel hearing is reversed. In all other respects, the judgment is affirmed.