Calvin M. Frazier Commissioner of Education Department of Education 303 West Colfax Avenue Denver, CO 80203
Dear Dr. Frazier:
I am writing in response to your request for a formal legal opinion concerning amending or repealing the Teacher Tenure Act.
QUESTIONS PRESENTED AND CONCLUSIONS
Without addressing any specific legislation or policy objective, your inquiry raises two questions:
1. Can the general assembly substantially change the status of someone who is already a tenure teacher by repealing or amending the Teacher Employment, Dismissal, and Tenure Act, C.R.S. 1973,22-63-101 et seq.?
 My conclusion is that under certain circumstances the general assembly may substantially change or repeal the Teacher Tenure Act so as to apply to tenure teachers.
2. Can the general assembly amend the Tenure Act to allow different dismissal and review procedures to be utilized?
 My conclusion is that the legislature can provide the opportunity for such pilot projects, but may not mandate them.
ANALYSIS
The initial inquiry must be whether the Teacher Tenure Act provides contractual rights to those teachers who have gained tenured status, i.e., a vested property right, or whether this legislation merely is a statement of legislative policy curtailing the power of local school districts. SeePhelps v. Board of Education of the Town of West NewYork, 300 U.S. 319 (1937); Indiana ex rel. Anderson v.Brand, 303 U.S. 95 (1938). Several Colorado Supreme Court cases indicate that the Teacher Tenure Act provides contractual rights to those teachers who have already gained tenure status.Maxey v. School District, 158 Colo. 583, 408 P.2d 970
(1965). Accord Marzec v. School District,142 Colo. 83, 349 P.2d 699 (1960). See Howell v.Woodlin School District, 198 Colo. 40, 596 P.2d 56, 60
(1979) ("by its nature / the grant of tenure / engenders a reasonable and objective expectancy of continued employment . . . even though not a guarantee under all circumstances" and is a "constitutionally protected property right.").
The prohibition against passing laws which impair the obligation of contracts applies only to those contractual rights which have vested. In this instance the right of tenure would vest when the teacher entered the fourth year of continuous teaching as provided by C.R.S. 1973, 22-63-112.
Vested rights, however, do not "accrue to thwart the reasonable exercise of the police power for the public good." LakewoodPawnbrokers, Inc. v. Lakewood, 183 Colo. 370, 517 P.2d 834
(1974) and Ohlson v. Phillips, 304 F. Supp. 1152 (D. Colo. 1969), aff'd, 397 U.S. 317, reh'gdenied, 397 U.S. 1081. This is because all rights are held subject to the police power and neither the state nor its political subdivisions can contract the police power away.Colorado Postal Telegraph Co. v. The City of ColoradoSprings, 61 Colo. 560, 158 P. 816 (1916). "In short, the Contract Clause does not require a state to adhere to a contract that surrenders an essential attribute of its sovereignty."United States Trust Co. v. New Jersey, 431 U.S. 1, 16
(1977).
Legislation enacted in regard to educational issues falls within the police power of the general assembly. In Lujan v.Colorado State Board of Education, 649 P.2d 1005, 1017
(Colo. 1982), the court stated
 We recognize unequivocally that public education plays a vital role in our free society. It can be a major factor in an individual's chances for economic and social success as well as a unique influence on a child's development as a good citizen and his future participation in political and community life.
See also Weissman v. Board of Education ofJefferson County, 190 Colo. 414, 547 P.2d 1267 (1976). Because legislation concerning teacher tenure is integrally related to the quality of the educational system it falls within the police power of the state. As such the Teacher Tenure Act may be modified or repealed without violating the contract clause as long as the modifications are a reasonable exercise of the police power.
In Anderson v. Brand, supra, the United States Supreme Court was faced with a similar set of circumstances as are raised by your inquiry. There, the Indiana legislature attempted to repeal the Teacher Tenure Act as it applied only to townships, leaving it intact as it applied to municipalities. The Teacher Tenure Act at issue provided for cancellation of teacher tenure for incompetency, insubordination, neglect of duty, immorality, justifiable decrease in teaching positions, or other good and just cause. The United States Supreme Court held that the repeal of the Teacher Tenure Act as to teachers employed by the townships was not a legitimate exercise of the police power and was an unconstitutional impairment of obligations. In so holding, the court stated,
 Our decisions recognize that every contract is made subject to the implied condition that its fulfillment may be frustrated by a proper exercise of the police power, but we have repeatedly said that, in order to have this effect, the exercise of the power must be for an end which is in fact public and the means adopted must be reasonably adapted to that end . . . .
303 U.S. at 109. The court further opined that the reasons for tenure cancellation already provided in the statute covered every conceivable basis growing out of deficient performance and diminution of the school requirements, and therefore the prior act covered all legitimate police power considerations. Additionally, the court determined that the partial repeal of the Teacher Tenure Act, affecting only some of the teachers, weighed against a legitimate exercise of the police power.
In Walsh v. School District of Pennsylvania, 334 Penn. 178, 22 A.2d 909 (1941), the court approved a reduction in salary to tenure employees as a legitimate exercise of the police power citing the Anderson decision. The court concluded that "for a justifiable public purpose applying to all school districts the repeal of the tenure act / in Indiana / might have been effectively accomplished" and stated,
 / We / do not think it possible to conclude that the Supreme Court of the United States in pointing out the express reservation of power to terminate the contracts in question denied the existence of unexpressed power in the Indiana legislature to wipe out the entire system of teacher's tenure if it thought it proper and necessary to do so.
Id. at 914-915. See also United StatesTrust Co. v. New Jersey, supra.
C.R.S. 1973, 22-63-116 provides the permissible reasons for dismissal of a tenure teacher based upon the teacher's conduct, and C.R.S. 1973, 22-63-112(3) provides for cancellation of an employment contract with a tenure teacher due to reduction in teaching positions. C.R.S. 1973, 22-63-116 mirrors the provision of the Indiana tenure law which the Anderson decision indicated encompassed all of the legitimate police power concerns of the state in regard to deficient teacher performance. Thus, repeal or amendment of the Colorado teacher tenure law on the grounds that the legislature is exercising its police power concerning inadequate teacher performance may be unconstitutional.
Anderson and Walsh, however, support the position that as to teachers who have already obtained tenure status, the provisions of the Teacher Tenure Act could be substantially changed or entirely repealed if necessary for a legitimate police power objective and if done in a reasonable manner. However, determining a legitimate police power objective which has not been addressed in the present Teacher Tenure Act will be difficult.
If your concern is that the Act does not adequately express the possible justifications for revoking tenured status on an individual basis, the legislature could further define the term "other good and just cause." C.R.S. 1973, 22-63-116.
If the amendments would alter the dismissal procedures provided by the Act the issue is whether the modifications would violate the prohibition against retrospective laws. Colo. Const. art. II. § 11. Where a statute affects only a procedural change the retrospective laws prohibition is not triggered.Continental Title Company v. District Court, 645 P.2d 1310
(Colo. 1982); Smith v. Putnam, 250 F. Supp. (D. Colo. 1965). However, the dismissal procedures must afford minimal due process.
Your second question asks whether the tenure law dismissal procedures could be less than uniform statewide and whether pilot projects could be initiated to determine the best procedure.
Pilot projects have been upheld in the social services area when time and place are limited and when entered into to determine the comparative efficiencies of differing models. Greater NewYork Hospital Ass'n v. Blum, 634 F.2d 668 (2d Cir. 1980). The Colorado General Assembly has enacted legislation providing for special projects when unique circumstances were present.E.g., C.R.S. 1973, 30-17-206 (Supp. 1983).
Pilot projects in education raise issues concerning the Colorado constitutional mandates that the general assembly shall not pass local or special laws providing for the management of common schools, and that the general assembly shall provide for the establishment of a "thorough and uniform system of free public schools throughout the state." See Colo. Const. art. V, § 25 and art. IX, § 2.
A statute is not special legislation when it is general in its operation upon all those in a like situation. Bushnell v.Sapp, 194 Colo. 273, 571 P.2d 1100 (1977). However, it is not enough that the language of the law appears to be general in application if in fact the effect of the law is to legislate in a special manner. See In Re School Districts,26 Colo. 136, 50 P.2d 173 (1899). The term "management," found in the constitutional provision, has been defined as: "the act of managing; the manner of treating, directing, carrying on or using for purpose; conduct; administration; guidance; control; as, the management of a farm." In Re Consolidation ofSchool Districts, 23 Colo. 499, 502, 48 P. 647 (1897). That court held that management is to have its comprehensive meaning, for example, "the compensation and place of education of teachers to be employed."
Presumably, the procedures to revoke tenure status would be included in the concept of management. Thus, if the legislature mandated that certain school districts be pilot projects to determine the most efficient system of dealing with tenure teachers' dismissals, this would violate the constitutional mandate against the legislature enacting special laws regarding the management of common schools. However, if the legislation merely allowed any school district, at its option, to try a different approach, under an optional state framework, presumably this would not be a special law. See,e.g., C.R.S. 1973, 22-63-105 (in regard to teacher salaries).
The issue exists, however, whether allowing pilot projects or allowing different approaches to dismissal procedures would violate the constitutional mandate that the general assembly "provide for the establishment of a thorough and uniform system of free public schools throughout the state." See
Colo. Const. art. IX, § 2. Justice Erickson in his special concurrence in Lujan supra states:
 A general and uniform system, we think, is "at the present time, one in which every child in the state has free access to certain minimum and reasonably standardized educational and instructional facilities and opportunities to at least the 12th grade — a system administered with that degree of uniformity which enables a child to transfer from one district to another within the same grade without substantial loss of credit or standing and with access by each student of whatever grade to acquire those skills and training that are reasonably understood to be fundamental and basic to a sound education."
Id. at 1028. In Lujan, the court found that "art. IX, § 2 of Colo. Const. is satisfied if thorough and uniform educational opportunities are available through state action in each school district." Id. at 1025 (emphasis added). The court also noted particular statutes which implemented the thorough and uniform mandate of the Colorado Constitution, including C.R.S. 1973, 22-60-101 et seq., which creates a uniform teacher certification program; the Teacher Tenure Act however was not mentioned. The court noted that "the historical development of public education in Colorado has been centered on the philosophy of local control" and "local control provides each district with the opportunity for experimentation, innovation, and a healthy competition for educational excellence." Id. at 1021-1023. Thus, the method for revoking teachers' tenure status need not be resolved in a uniform manner throughout the state, as long as minimal due process is guaranteed.
A final concluding caveat should be added. This opinion addresses only the general implications of amending the Teacher Employment Dismissal and Tenure Act, C.R.S. 1973, 22-63-101et seq., as no specific language or policy objective has been presented in your inquiry. Ongoing legal advice and assistance will be necessary if any new tenure legislation is to be drafted which will be both workable and consistent with the principles set forth in this attorney general opinion.
SUMMARY
It is my opinion that the Teacher Tenure Act may be repealed or amended so as to apply to all teachers, as long as a police power objective which is not mentioned in the present act is articulated as the basis. Additionally, although a mandate to create specific pilot projects embodying differing procedure for the dismissal of teachers would be unconstitutional, the general assembly could turn the issue back to local control and allow any school district to experiment with different approaches at its option.
Very truly yours,
 DUANE WOODARD Attorney General
UNIFORM LAWS STATUTES EDUCATION TERM OF OFFICE
22-63-101 et seq.
Colo. Const. art. II, § 11
Colo. Const. V. § 25 Colo. Const. IX § 2
EDUCATION, DEPT. OF
C.R.S. 1973, 22-63-101 et seq. may be modified or repealed as to tenure teachers as if for a legitimate police power rationale. Dismissal procedures may vary throughout the state as long as minimal due process is guaranteed.