BEDFORD MOTORS, INC., d/b/a Highland Chevrolet, Inc., d/b/a Mike Flannery Chevrolet, a Colorado corporation, Plaintiff-Appellant,

v.

Perry HARRIS, as President of the Colorado Motor Vehicle Dealer Licensing Board, Defendant-Appellee.

No. 84SA403.

Supreme Court of Colorado,
En Banc.

Feb. 24, 1986.

Philip E. Lowery, Scot W. Nolte, Denver, for plaintiff-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard Forman, Sol. Gen., Maurice Knaizer, Asst. Atty. Gen., Denver, for defendant-appellee.

KIRSHBAUM, Justice.

The plaintiff, Bedford Motors, Inc. (Bedford), appeals the district court's affirmance of an order of the Colorado Motor Vehicle Dealer Licensing Board (the Board) suspending the plaintiff's license for ten days for violation of section 12-6-118(3)(k), 5 C.R.S. (1978).[1] On appeal, Bedford raises three arguments: (1) the statute is unconstitutionally vague; (2) the district court erred in interpreting the statute; and (3) the sanctions imposed by the Board were arbitrary and capricious. We reject Bedford's arguments and affirm the district court's order.

I

In March 1980, the Board issued an order to show cause to Bedford alleging violations of section 12-6-118(3)(e), (k) and (o), 5 C.R.S. (1978),[2] and regulations 12-6-118(3)(k)(21) and (23) of the Board.[3] The show cause order alleged that from April 1978 to March 1980, Bedford advertised vehicles for sale which were not available for sale or were only available at a price higher than the advertised price.

On December 30, 1980, a hearing was conducted. Bedford's president, Michael Flannery, was the only witness at that proceeding. He testified that Bedford had not intended to mislead anyone with the newspaper advertisements in question and that those advertisements had not been kept current due to "laziness." He admitted that the specific cars referred to in the advertisements were under contract or otherwise sold at the time the advertisements were published. He also admitted that these cars were sold at a price higher than advertised and that the advertised price on some of the cars was increased by dealer and handling charges.

The hearing officer concluded that Bedford had violated section 12-6-118(3)(k)[4] by intentionally publishing misleading information, construing section 12-6-118(3)(k) to require intent to publish rather than intent

---

1. Because Bedford challenges the constitutionality of § 12-6-118(3)(k), this court has jurisdiction over the appeal pursuant to § 13-4-102(1)(b).

2. Section 12-6-118(3)(e), (k) and (o) provide:

 A motor vehicle dealer's, wholesaler's, or used motor vehicle dealer's license may be denied, suspended, or revoked on the following grounds:

 ....

 (e) Defrauding any retail buyer, motor vehicle salesman, or financial institution to such person's damage;

 ....

 (k) To intentionally publish or circulate any advertising which is misleading or inaccurate in any material particular or which misrepresents any of the products sold or furnished by a licensed dealer;

 ....

 (o) To willfully violate any law of the state respecting commerce and motor vehicles or any lawful rule or regulation respecting com-

merce and motor vehicles promulgated by any licensing or regulating authority pertaining to motor vehicles.

3. Regulations 12-6-118(3)(k)(21) and (23) of the Board prohibit:

 [21] Advertising a specific motor vehicle for sale which is not in the possession of the dealer and willingly shown and sold, as advertised at the advertised price, or available at the advertised price on written order if so specified in the advertisements.

 [23] Advertising the price of a vehicle without including all costs to the purchaser at the time of delivery at dealer's premises except sales taxes and finance charges. The advertised price must be a total price; no separate disclaimers for dealer preparation and handling, get-ready, documentary fees, delivery, etc. are allowed.

4. The hearing officer also concluded that Bedford violated § 12-6-118(3)(o) and regulations 12-6-118(3)(k)(21) and (23).

to mislead. The hearing officer also found that the Bedford employee responsible for placing the advertisements intended to publish misleading advertisements.

The Board adopted the findings, conclusions and recommendations of the hearing officer and ordered Bedford's license suspended for ten days. The Board then ordered the final seven days of the suspension to be held in abeyance pending satisfactory completion of a one-year probationary period. Bedford sought judicial review of that ruling, and on October 1, 1983, the district court affirmed the Board's order. The district court concluded that section 12–6–118(3)(k) required only an intent to publish, rather than an intent to mislead, indicating that even a negligently misleading advertisement would violate section 12–6–118(3)(k). The district court also found that the record established that Bedford had intended to mislead potential customers.

## II

Section 12–6–118(3)(k) provides in pertinent part as follows:

A motor vehicle dealer's ... license may be denied, suspended, or revoked on the following grounds:

(k) To intentionally publish or circulate any advertising which is misleading or inaccurate in any material particular....

The district court concluded that the word "intentionally," as used in section 12–6–118(3)(k), modifies only the words "publish or circulate."[5] Bedford argues that under that interpretation section 12–6–118(3)(k) is void for vagueness.[6]

**5.** Bedford also asserts that the district court concluded that a dealer could be punished under § 12–6–118(3)(k) for either intentional or negligent conduct. The district court did not so hold. Rather, the district court stated that the purpose of the "*Act* is to protect the consumer against advertising which is either negligent or misleading." (emphasis added). This construction of the general purpose of the Act is not dispositive of the question of whether § 12–6–118(3)(k) is void for vagueness.

**6.** Bedford argues in its brief on appeal that the Board and the district court offered different

It is axiomatic that legislative enactments are to be presumed constitutional by the courts, and that a party attacking a statute on constitutional grounds bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt. *Colorado Auto & Truck Wreckers Association v. Department of Revenue*, 618 P.2d 646 (Colo.1980). The initial inquiry in a vagueness challenge "is whether the law in question either forbids or requires the doing of an act in terms so vague that men of ordinary intelligence must necessarily guess as to its meaning and differ as to its application...." *People v. Alexander*, 663 P.2d 1024, 1028 (Colo.1983) (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). In *Weissman v. Board of Education*, 190 Colo. 414, 547 P.2d 1267 (1976), we explained the scope of the vagueness doctrine:

[T]otal precision of expression is elusive and has never been demanded of the legislature....

. . . .

The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing ... statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.

*Id.* at 422–23, 547 P.2d at 1274 (quoting *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972));

interpretations of the *mens rea* requirement of § 12–6–118(3)(k) and suggests that this fact supports its position that the section is unconstitutionally vague. This argument appears to confuse the question of whether a statute is void for vagueness with the question of whether the statute is unconstitutional as applied. *See People v. Taylor*, 618 P.2d 1127 (Colo.1980); *Puzick v. City of Colorado Springs*, 680 P.2d 1283 (Colo.App. 1983). The manner in which the district court or the Board may or may not have interpreted the statute as applying to Bedford's conduct is immaterial to a vagueness challenge.

accord *R & F Enterprises, Inc. v. Board of County Commissioners,* 199 Colo. 137, 606 P.2d 64 (1980). When a statute is challenged on grounds of vagueness, courts must attempt to construe the legislation in such manner as to satisfy constitutional due process requirements. *See, e.g., People v. Moore,* 674 P.2d 354 (Colo.1984); *People v. Rostad,* 669 P.2d 126 (Colo.1983).

Bedford concedes that the statute requires proof of intentional publication or circulation. Its argument is, in essence, that if the district court is correct in concluding that the advertisement which is the subject of the publication may be materially misleading or inaccurate as the result of conduct which is either intentional or negligent, the statute contains no ascertainable standards and is, therefore, void for vagueness. We do not agree with the district court's construction of the statute.

 The Act is designed to prevent certain conduct of dealers which is harmful to consumers; section 12-6-118(3)(k) specifically prohibits distribution of materials which are inaccurate or misleading. In furtherance of the general purpose of the Act, the General Assembly has chosen to punish intentional conduct in subsection 118(3)(k). Logically, it would appear that any intentional publication or circulation of advertising materials necessarily requires some nexus between the person who causes the publication or circulation and the material that is the subject thereof. In the absence of some knowledge or awareness of the misleading or inaccurate nature of the matter published, it is difficult to conceive of an "intentional" publication thereof. In consideration of the purpose of the Act and the language of the statute, we conclude that subsection 118(3)(k) prohibits the intentional publication or circulation of advertising which the seller knows to be inaccurate or misleading.

This construction of subsection 118(3)(k) is supported by consideration of the following language of section 18-1-503(4), 8 C.R.S. (1978), which provides interpretative guidelines with respect to the construction of sections of the Colorado Criminal Code:

When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears.

By analogy, the term "intentionally" can be said to apply to all elements of the conduct proscribed by section 12-6-118(3)(k), as no intent to limit the application of that term can be discerned from the language of the statute. This construction supplies the necessary nexus between the seller's act of publishing or circulating and the content of what is published or circulated; so construed, the statute contains a standard that is sufficiently definite to permit persons of ordinary intelligence to understand what conduct is prohibited. *See City of Lakewood v. Colfax Unlimited Association, Inc.,* 634 P.2d 52 (Colo.1981).

In *People v. Krovarz,* 697 P.2d 378 (Colo. 1985), we held that there is no practical difference between knowledge and intention relative to circumstances, both culpable mental states requiring that the actor be aware that certain circumstances exist. In the context of the language of section 12-6-118(3)(k), the content of the advertisement is a circumstance of the publication, not a result thereof. In view of the language of section 12-6-118(3)(k), the difference between intentional and knowing conduct is non-existent with respect to the contents of the publication.

[5] The evidence introduced during the administrative proceedings clearly supports the conclusion that Bedford knew the advertising was misleading at the time it was published. Indeed, the district court affirmed the hearing officer's conclusion that Bedford intended to mislead consumers—a mental state arguably higher than the element of knowledge required by the statute. *See* § 18-1-503(3), 8 C.R.S. (1978).

### III

 Bedford also contends that the sanctions imposed by the Board for his violations of section 12-6-118(3)(k) and (*o*) and

regulations· 12–6–118(3)(k)(21) and (23) are arbitrary and capricious. After adopting the hearing officer's findings, the Board suspended Bedford's license for ten days, the last seven days of which were ordered held in abeyance pending Bedford's successful completion of a one-year probationary period. Section 12–6–118(3) provides that any violation of subsection (k) may result in the suspension or revocation of a dealer's license. We conclude that the Board appropriately exercised its statutory discretion in ordering the suspension.

The order of the district court is affirmed.